Juanita JOHNSTON, Plaintiff,

v.

William J. HENDERSON, as Postmaster General of the United States, Defendant.

No. 00–6445CIV.

United States District Court, S.D. Florida.

May 1, 2001.

Stewart Lee Karlin, Stewart Lee Karlin, Fort Lauderdale, FL, for Juanita Johnston, plaintiffs.

Jeffrey R. Levenson, AUSA, United States Attorney's Office, Fort Lauderdale, FL, Stephanie Webster, U.S. Postal Service, Law Dept., Atlanta, GA, for United States Post Master General, William Henderson, Post Master General of the United States Postal Service Agency, defendants.

## ORDER GRANTING FINAL SUMMARY JUDGMENT, ENTERING FINAL JUDGMENT AGAINST PLAINTIFF, AND CLOSING CASE

JOHNSON, United States Chief Magistrate Judge.

**THIS CAUSE** is before the Court on Defendant's Motion For Summary Judgment (D.E.# 22). This matter was referred to this Court by the Honorable William P. Dimitrouleas, United States District Judge for the Southern District of Florida, after the parties consented to trial before the undersigned United States Magistrate Judge. In view of said consent, the above-stated motion shall be disposed of by order rather than by report and recommendation. For the following reasons Defendant's Motion for Summary Judgment is granted.

## I. BACKGROUND

Plaintiff, Juanita Johnston ("Johnston" or "Plaintiff") has filed the instant action against her employer William J. Henderson, Postmaster General of the United States ("Defendant") alleging disability discrimination, retaliation and hostile work environment under the Rehabilitation Act of 1973 as amended, 29 U.S.C. 701 *et seq.* Specifically, Johnston contends she has been discriminated against and subjected to a hostile environment based on her alleged disability, post traumatic stress disorder ("PTSD"), and has been retaliated against for participating in pro-

tected activity (filing numerous EEO complaints) and for pursuing worker's compensation benefits.

## II. *UNDISPUTED MATERIAL FACTS*

The following facts are pertinent to the resolution of Defendant's Motion for Summary Judgment and generally undisputed. Where there is any discrepancy in the record, the Court views the evidence in the light most favorable to the nonmoving party, in this case the Plaintiff.

1. Plaintiff Juanita E. Johnston has been employed by the U.S. Postal Service since April 22, 1991. She began her employment as a clerk (Flat Sorter Machine ["FSM"] Operator) at the South Florida Processing and Distribution Center ("P & DC") in Pembroke Pines, Florida. She now works in a limited duty position. in "revenue protection", which involves the processing of mail that lacks the proper postage. Her limited duty is the result of an on-the-job shoulder injury which occurred in January, 1998. Plaintiff's Depo. I, pp. 67, 154–155.[1] The acts of discrimination complained of by Johnston arise from an incident that occurred on November 20, 1998. On that date, another clerk at the P & DC, Debra Adams, found an unaddressed envelope with the words "Happy Holiday postal employee" on the front, and "just been exposed to anthrax" on the back. Ex. 1 to Defendant's Motion for Summary Judgment. Ms. Adams delivered the envelope to her supervisor, Patrick Keough. Adams depo. p. 5. Johnston never touched the subject envelope, although she testified at her Office of Worker Compensation Program (OWCP) hearing and in her deposition that she saw the co-worker holding the envelope. Plaintiff's Depo. I, p. 71; Adams Depo., p. 11.

2. The Postal Inspection Service, FBI, and a Hazard–Materials Team responded to the P & DC. Within five hours it was determined that the envelope actually did not contain anthrax virus, and all employees were so advised. Plaintiff's Depo. I, p. 104.

3. Based on the above incident, Johnston filed a CA–1 form, Federal Employee's Notice, Traumatic Injury and Claim for Continuation of Pay/Compensation on November 21, 1998 (Ex. 1 to Defendant's Motion for Summary Judgment, pp. 5–8) and stopped working on November 24, 1998. On said CA–1 form Johnston stated the cause of the injury as follows: "The finding of a letter with Anthrax. The potential of being exposed to anthrax and the nonaction of management causing excessive stress and anxiety (sic), potential exposure to anthrax, headache (sic), flushing, fatigue, emotional drain." *Id.* at 5 Johnston was seen on November 21, 1998 by a physician at Memorial West Hospital who indicated the history of the injury as "she was stressed out yesterday at work when headache started." *Id.* at 8. The physician noted that no hospitalization was required and anticipated that no permanent effects would result from the incident. *Id.*

4. By Notice of Decision dated January 27, 1999, the U.S. Department of Labor ("DOL") denied Johnston's OWCP claim for the above injury. Ex. 2 to Defendant's Motion for Summary Judgment, pp. 1–2. The DOL found that "the medical evidence was not sufficient to establish that [John-

---

1. Plaintiff was deposed on two separate occasions on December 6, 2000 and on January 22, 2001. The transcript of the first deposition is referenced as Plaintiff's Depo. I and the second deposition is referenced as Plaintiff's Depo. II.

ston's] condition was caused by the event, as required by the Federal Employee's Compensation Act." In its Notice of Decision, the DOL informed Johnston that the Postal Service "will charge the previously paid Continuation of Pay ("COP") to [Johnston's] sick and/or annual leave balance" and if she didn't have a leave balance "the money already paid as COP will be deemed an overpayment within the meaning of 5 U.S.C. § 5584." *Id.* at 2.

5. Based on the denial of her OWCP claim, Johnston requested and received a hearing before the DOL on July 20, 1999. This hearing resulted in a reversal of the district office's denial of Johnston's claim. Ex. 3 to Defendant's Motion for Summary Judgment. The hearing representative concluded that Johnston's claim for post traumatic stress reaction should be accepted and appropriate compensation benefits should be paid.

6. Johnston was absent from work due to the alleged post traumatic stress disorder ("PTSD") and the anthrax virus scare for more than four months from November 24, 1998, through April 5, 1999. Plaintiff's Depo. I, pp. 144,26. She returned to work initially in a limited/light duty status with the following restrictions per Sherrie Lewis–Thomas, Ph.D.: "Limited exposure to conflict, stress, and to exposure to dangerous situations (i.e. explosive customers)." Interestingly, by a note dated April 12, 1999, Johnston requested to be placed on the overtime list, even though she was at that time restricted from overtime by her health care providers. Ex. 4 to Defendant's Motion for Summary Judgment; Plaintiff's Depo. I, pp. 144–145.

7. Effective September 7, 1999 and continuing to the present, Johnston was placed in a limited duty assignment due to a shoulder injury that occurred spontaneously on January 10, 1998 while casing or sorting the mail, "all of a sudden I (Plaintiff) couldn't raise my hand anymore..." Plaintiff's Depo. I pp. 59–60. In this most recent limited duty assignment, Johnston works in the revenue protection position. Johnston has remained on limited duty ever since her return to work following her absence due to PTSD. *Id.* at 143.

8. Johnston filed her first EEO Complaint of Discrimination five months after beginning employment with the Postal Service. Since that time, she has filed an additional thirty-two (32) EEO complaints. Ex. 10 to Defendant's Motion for Summary Judgment, ¶ 11. Of those claims, six (6) are relevant to the claims asserted in this action. The relevant EEO cases are summarized below.

(a) *EEO Agency Case Number 1–H–333–0026–99.* This EEO case is relevant to allegations in Johnston's Complaint, paragraph 14, subparagraph a. In this EEO complaint, Johnston alleged that she was discriminated against and harassed when she received unsigned, incomplete insurance forms from the OWCP office that delayed her benefits. Johnston asserted discrimination based on race (Hispanic), sex (female), national origin (Belyea), age (42), physical disability (stress), and retaliation. Ex. 5 to Defendant's Motion for Summary Judgment, pp. 1,4. The Postal Service issued a Final Agency Decision ("FAD") dated June 17, 1999 dismissing this EEO complaint pursuant to 29 C.F.R. § 1614.107(a) for failure to state a claim. Ex. 5 to Defendant's Motion for Summary Judgment, pp. 5–6. The FAD was received by Johnston on June 22, 1999. *Id.* at 8. The Complaint in the instant case was filed on March 30, 2000, more than 285 days after Johnston received the Final Agency Decision in the above EEO case. Docket Entry No. 1.

(b) *EEO Agency Case Number 1–H– 333–0022–99.* This EEO case is relevant to allegations in Johnston's Complaint, paragraph 14, subparagraphs b and c. Plaintiff's Depo. II, pp. 18–19, 32. In this complaint, Johnston alleges that the Postal Service deliberately altered her OWCP documents after they had been approved by the agency in order to discriminate against her and prevent her from receiving benefits. Johnston asserted discrimination based on race (Hispanic), sex (female), national origin (Belyea), age (42), physical disability (stress), and retaliation. Ex. 1 to Defendant's Motion for Summary Judgment, p. 9; Plaintiff's Depo. II, pp. 18–19, 32.

(c) *EEO Agency Case Number 1–H– 333–0013–00.* This EEO case is relevant to allegations in Johnston's Complaint, paragraph 14, subparagraph e. In this case, Johnston alleged that on January 22, 2000, she requested and received her unemployment benefits file and found a copy of her forms CA–20 and CA–17. These documents allegedly contained medical diagnosis and prognosis in the file. In this case, Johnston claimed discrimination based on race (Hispanic), religion (Catholic), national origin, mental disability (PTSD), and retaliation. Ex. 8 to Defendant's Motion for Summary Judgment, p. 1. Johnston filed this formal complaint on March 15, 2000, within the fifteen day limit. Ex. 8 to Defendant's Motion for Summary Judgment, p. 4. On March 30, 2000, Johnston filed suit in the instant action, which is less than one hundred eighty days from the date that she filed her formal complaint of discrimination.

(d) *EEO Agency Case Number 1–H– 333–0038–99.* This EEO case is relevant to allegations in Johnston's Complaint, paragraph 14, subparagraph f. In that matter, Johnston alleged that she was discriminated against when she received a letter of demand requesting that she repay the Postal Service $1,582. 53. The repayment was for money that had been paid to Johnston as Continuation of Pay (COP) while her OWCP stress claim was pending. When her OWCP claim initially was denied by the DOL, the Postal Service took steps to collect this money. Johnston was advised by the DOL in it's January 27, 1999 Notice of Decision that this collection would take place. Ex. 6 to Defendant's Motion for Summary Judgment. Johnston claimed discrimination based on physical disability (stress) and retaliation.

(e) *EEO Agency Case Number 1–H– 333–0051–99* This EEO case is relevant to Johnston's Complaint, paragraph 14, subparagraph g. In this EEO complaint Johnston complained she experienced discrimination when leave was improperly designated under the Family Medical Leave Act (FMLA), without her approval or authorization. Johnston alleged discrimination based upon race, religion, sex, age, national origin, mental disability, and retaliation. Ex. 9 to Defendant's Motion for Summary Judgement, p. 1.

(f) *EEO Agency Case Number 1–H– 333–0011–00.*[2] This EEO case is relevant to allegations in Johnston's Complaint, paragraph 14, subparagraphs j and l. In this complaint, Johnston alleged she was discriminated against when she noticed, on December 26, 1999, that her salary on her pay stub was incorrect. (In fact, her salary had been adjusted based on the work of a task force and an agreement between

**2.** This case was consolidated with Agency Case numbers 1–H–333–0014–00 and 4–H–330–0237–00. Processing took place under the consolidated Agency Case number 1–H–333–0011–00.

management and the unions concerning errors in pay dating back to 1994.) Ex. 7 to Defendant's Motion for Summary Judgment, p. 1. Johnston asserted discrimination based upon race (Hispanic), sex (female), Age (43), national origin, mental disability (PTSD), and retaliation. Id. at p. 4. Johnston filed this formal EEO complaint on March 15, 2000 within the fifteen day limit. Id. at p. 7. On March 30, 2000, Johnston filed suit in the instant action, which is less than 180 days from the date she filed her formal complaint of discrimination.

(g) Johnston did not file EEO complaints concerning the allegations in paragraph 14, subparagraphs d, g, i, k, and m of this lawsuit.

9. On March 30, 2000 Johnston filed the instant Complaint in this Court for discrimination. Docket Entry No. 1.

### III. *STANDARD OF REVIEW*

The court, in reviewing a motion for summary judgment, is guided by the standard set forth in Federal Rule of Civil Procedure 56(c), which states, in relevant part, as follows:

> The Judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to Judgment as a matter of law.

The moving party bears the burden of meeting this exacting standard. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). That is, "[t]he moving party bears 'the initial responsibility of informing the ... court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact.' " *U.S. v. Four Parcels of Real Property,* 941 F.2d 1428, 1437 (11th Cir.1991) (quoting *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548). In assessing whether the moving party has satisfied this burden, the court is required to view the evidence and all factual inferences arising therefrom in the light most favorable to the non-moving party. *Korman v. HBC Florida, Inc.,* 182 F.3d 1291 (11th Cir.1999); *Terrell v. USAir,* 132 F.3d 621, 624 (11th Cir.1998). If the record presents factual issues, the court must deny the motion and proceed to trial. *Adickes,* 398 U.S. at 157, 90 S.Ct. 1598; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Even where the parties agree on the basic facts, but disagree about the inferences that should be drawn from those facts, summary judgment may still be inappropriate. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505; *U.S. v. Twenty (20) Cashier's Checks,* 897 F.2d 1567, 1569 (11th Cir.1990). As noted by the court in *Anderson,* "[c]redibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a Judge...." 477 U.S. at 255, 106 S.Ct. 2505. *See also Mize v. Jefferson City Board of Edu.,* 93 F.3d 739, 742 (11th Cir.1996).

Despite these presumptions in favor of the non-moving party, it must be borne in mind that the purpose of Rule 56 is to eliminate the needless delay and expense to the parties and to the court occasioned by an unnecessary trial. *Celotex,* 477 U.S. at 322–323, 106 S.Ct. 2548. Consequently,

the non-moving party cannot merely rest upon his bare assertions, conclusory allegations, surmises or conjectures. *Id.* As the Supreme Court noted in *Celotex,*

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment ... against the party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which the party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Id.* at 322–323, 106 S.Ct. 2548. Thus, the mere existence of a scintilla of evidence in support of the non-movant's position is insufficient. There must be evidence on which the jury could reasonably find for the non-movant. *Anderson,* 477 U.S. at 251, 106 S.Ct. 2505; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (to successfully establish the existence of a genuine factual dispute, the non-moving party must demonstrate more than "some metaphysical doubt as to the material facts ... [it] must come forward with 'specific facts showing that there is a genuine issue for trial'"). *Id.* (quoting Fed.R.Civ.P.56(e)). This principle applies with equal force in employment discrimination actions. *Chapman v. AI Transport,* 229 F.3d 1012, 1026 (11th Cir.2000). "The summary judgment rule applies in employment discrimination cases just as in other cases; no thumb is to be placed on either side of the scale." *Id.; Earley v. Champion Int'l Corp.,* 907 F.2d 1077, 1081 (11th Cir.1990)("[s]ummary judgments for defendants are not rare in employment discrimination cases." Plaintiff must "present concrete evidence in the form of specific facts....Mere conclusory allegations and assertions will not suffice.") (citations omitted); *Brown v. American Honda Motor Co.,* 939 F.2d 946, 953 (11th Cir. 1991); *Grigsby v. Reynolds Metals Co.,* 821 F.2d 590, 595–96 (11th Cir.1987).

## IV. *LEGAL ANALYSIS*

### A. *PLAINTIFF CANNOT MAKE OUT A PRIMA FACIE CASE OF DISABILITY DISCRIMINATION UNDER THE REHABILITATION ACT*

■ The Rehabilitation Act prohibits federal agencies from discriminating in employment against otherwise qualified individuals with a disability. 29 U.S.C. § 791; *Mullins v. Crowell,* 228 F.3d 1305, 1313 (11th Cir.2000). In order to establish a prima facie case of discrimination under the Rehabilitation Act an individual must show that he or she: (1) has a disability; (2) is otherwise qualified for the position; and, (3) was subjected to unlawful discrimination as a result of such disability. *Sutton v. Lader,* 185 F.3d 1203, 1207 (11th Cir.1999). Discrimination claims under the Rehabilitation Act are governed by the same standards used in ADA cases. *Holbrook v. City of Alpharetta, Ga.,* 112 F.3d 1522, 1526 n. 2 (11th Cir.1997). Thus, "[c]ases decided under the Rehabilitation Act are precedent for cases under the ADA, and *vice-versa.*" *Cash v. Smith,* 231 F.3d 1301, 1305 n. 2 (11th Cir.2000).

### 1. *Plaintiff Does Not Meet The Definition Of An Individual With A Disability*

■ The Rehabilitation Act defines "individual with a disability" as any person who:

(i) has a physical or mental impairment which substantially limits one or more of such persons major life activities, (ii) has a record of such impairment, or (iii) is regarded as having such an impairment.[3]

29 U.S.C. § 706(8)(B). "Major life activities means functions, such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1614.203(a)(3). These provisions, requiring a substantial limitation on a major life activity, exclude individuals with minor impairments which merely affect the ability to satisfy the singular demands of a particular job, *Cash v. Smith*, 231 F.3d 1301, 1306 (11th Cir.2000); *Gupton v. Commonwealth of Virginia*, 14 F.3d 203 (4th Cir.), *cert. denied*, 513 U.S. 810, 115 S.Ct. 59, 130 L.Ed.2d 17 (1994); *Forrisi v. Bowen*, 794 F.2d 931, 933–34 (4th Cir. 1986), and individuals with only temporary impairments, *Sutton v. Lader*, 185 F.3d 1203, 1209 (11th Cir.1999)("A temporary inability to work while recuperating from surgery is not such a permanent or long-term impairment and does not constitute evidence of a disability covered by the Act.") (citation omitted). Whether an impairment substantially limits a major life activity, is to be determined in light of: (1) the nature and severity of the impairment; (2) its duration or expected duration; and, (3) its permanent or long term impact, or its expected permanent or long-term impact. 20 C.F.R. § 1630.2(j)(2).

■ In her various EEO claims and in the instant Complaint Johnston alleges that she suffers from the mental disability of post traumatic stress disorder ("PTSD") which was brought about as a result of her witnessing a co-worker handle an envelope which was purportedly infected with the anthrax virus, but on testing was in fact not so infected, and managements slow response time in addressing the scare. Her symptoms were described in her various EEO claims as excessive stress, anxiety, headaches, flushing, fatigue, and emotional drain. Now, for the first time in her Response in Opposition to Defendant's Motion for Summary Judgment, Johnston alleges that she is disabled due to "sexual dysfunction" and a litany of other impairments she never before mentioned, such as sleeping problems, learning disorder, memory retention, reclusive, obesity, and daily hygiene. It is unclear whether Johnston is asserting separate disorders or describing conditions arising from her alleged PTSD. In either event the foregoing analysis remains the same.

■ As Defendant correctly observes, while PTSD is a mental impairment, "PTSD ... standing alone, is not necessarily a disability contemplated by the ADA." *Hamilton v. Southwestern Bell Telephone Co.*, 136 F.3d 1047, 1050 (5th Cir.1998); *see also Gazaway v. Makita*, 11 F.Supp.2d 1281 (D.Kan.1998)(plaintiff suffering from post traumatic stress disorder did not have a disability within the meaning of the ADA). To be covered under the Rehabilitation Act, Johnston must demonstrate that her PTSD is such that it substantially limits a major life activity. *Hamilton*, 136 F.3d at 1050;*Floyd Adams v. Autozoners, Inc.*, 1999 WL 744039, at *3 ("plaintiff's allegation that he suffered from a mental impairment, PTSD, is not enough to assert a disability protected by the ADA. Plaintiff must also show that the impairment limited one of his major life functions."); *Croley v. Republican National Committee*, 759 A.2d 682, 700–01 (D.C.2000)(same).

Fatal to Johnston's claim is that even if we assume Johnston suffers from all the

---

**3.** Johnston does not allege that she has a record of such impairment.

symptoms she has enumerated, she has still failed to specify a major life activity in which she is substantially limited and, what's more, has failed to provide any evidence of such a limitation. While Johnston has alleged she sometimes has panic attacks, she has not shown these panic attacks have limited any of her major life activities. The same is true of the other symptoms Johnston has alleged of excessive stress, anxiety, headaches, flushing, fatigue, emotional drain, sexual dysfunction, sleeping problems, learning disorder, memory retention, reclusive behavior, obesity, and daily hygiene. While these alleged impairments can be expected to have an adverse impact on Johnston's life, there is no evidence that they have limited her in a major life activity. The best evidence on this point comes from Johnston's conduct and her own deposition testimony. In the instant case, Johnston has returned to work full time in a limited duty capacity due to a shoulder injury unrelated to the disability claim herein. Plaintiff's Depo. I, pp. 143–44, 154–55. Moreover, upon her return to work in April, 1999, Johnston requested to be put on the overtime work list. Ex. 4 to Defendant's Motion for Summary Judgment; Plaintiff's Depo. I, pp. 144–48. In addition to working full time, Johnston cooks, walks, drives a car, reads books, takes care of herself, goes to work herself, uses the computer, and takes care of her mother. Plaintiff's Depo. I, pp. 114, 139, 152. As demonstrated by her own conduct and her sworn testimony, Johnston is not and could not reasonably be found by a rational trier of fact to be, substantially limited in any major life function. *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348 (where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial).

To be substantially limited in the major life activity of "working," the individual must be *significantly* restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes compared to the average person having comparable training skills and abilities. *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278 (11th Cir.1997); *Pritchard v. Southern Company Services*, 92 F.3d 1130, 1133 (11th Cir. 1996); 29 C.F.R. § 1630.2(j)(3)(i). "Although a plaintiff seeking recovery under the ADA, is not required to prove a comprehensive list of jobs which [he] cannot perform, the person must provide some evidence beyond the mere existence and impact of a physical impairment to survive summary judgment." *Swain v. Hillsborough County School Bd.*, 146 F.3d 855, 858 (11th Cir.1998). An impairment does not substantially limit the ability to work merely because it prevents an individual from performing either a particular specialized job or a narrow range of jobs. *Id.* Nor does the inability to perform a single, particular job constitute a substantial limitation in the major life activity of working. *Id.* "The inquiry is whether … the particular impairment constitutes for the particular person a significant barrier to employment." *Forrisi v. Bowen*, 794 F.2d 931, 933 (4th Cir.1986); *see also Cash v. Smith*, 231 F.3d 1301, 1306 (11th Cir.2000)("To be substantially limited in the major life activity of working, an individual must be precluded from more than one type of job, even if the job foreclosed is the individual's job of choice."); *Jasany v. United States Postal Service*, 755 F.2d 1244 (6th Cir.1985)(postal clerk with mild case of crossed eyes that caused him to develop eye strain and headaches after operating a particular machine was not substantially limited in working because he was capable

of working at other jobs within the post office); *Mustafa v. Clark County School Dist.,* 876 F.Supp. 1177 (D.Nev.1995)(teacher whose anxiety disorder prevented him from working in a classroom was not substantially limited in his ability to work because he was not precluded from employment in general). In Johnston's case, not only has she has returned to work on a full time basis since her leave of over four months, but since her return she has requested to be placed on the overtime work list.[4] This hardly seems consistent with Johnston's claim that she is substantially limited in the major life activity of working.

Nor is Johnston's return to work on a full time basis consistent with a permanent or long-term impairment of the sort required by the Act. The law is well settled that temporary, nonchronic impairments of short duration, with little or no long-term or permanent impact, are not disabilities as defined by the Act. *Sutton v. Lader,* 185 F.3d 1203, 1209 (11th Cir.1999)(temporary inability to work is not permanent or long-term impairment and does not constitute evidence of disability covered by the Rehabilitation Act); *Huff v. UARCO, Inc.,* 122 F.3d 374 (7th Cir.1997)(temporary condition not disability under the Act); *Sanders v. Arneson Products, Inc.,* 91 F.3d 1351, 1354 (9th Cir.1996)(plaintiff's four-month temporary impairment was to brief to be a "disability"). Here, we not only have a plaintiff who after a four month absence from work, returns to work full-time asking for overtime, but a record devoid of any evidence from a doctor or anyone else that Johnston's ability to work, or engage in any other major life function, is impaired in a long-term or permanent way.

Finally, Johnston's claim that she was discriminated against because she was perceived by her employer as disabled is, like the entirety of her Complaint, nothing short of frivolous. In order for Johnston to prevail on a "perceived as" theory of disability discrimination, she must be able to show that, as with a real impairment, the perceived impairment is "substantially limiting" and significant. *Sutton v. Lader,* 185 F.3d 1203, 1208 (11th Cir.1999). To show that she was perceived as disabled, Johnston must produce "substantial evidence" that her employer regarded her as having a permanent or long-term impairment. *Id.* at 1209. From the evidence of record it is abundantly clear that Defendant never regarded Johnston as substantially limited in any major life activity, and Johnston has produced not a scintilla of evidence to indicate otherwise. In her Response in Opposition to Summary Judgment, Johnston makes the unsubstantiated allegations that her "employer treated [her] as if she had a mental impairment" and "[her] supervisor considered her as disabled." Consistent with Johnston's actions throughout these summary judgment proceedings, she falls to back up her allegations with any evidence. In support of her wholly conclusory allegations she cites not even one incident or fact as evidence. Johnston's failure to present concrete evidence in the form of specific facts, sounds the death knell for her claim of disability discrimination and mandates summary judgment. *Earley v. Champion Int'l Corp.,* 907 F.2d 1077, 1081 (11th Cir. 1990)(to defeat summary judgment plaintiff must "present concrete evidence in the form of specific facts. . . . Mere conclusory allegations and assertions will not suffice.").

**4.** Plaintiff is currently working in a limited duty capacity due to a shoulder injury unrelated to her current disability claim.

**2. *Because Plaintiff Is Not Disabled She Is Not Entitled To Reasonable Accommodation And, Even Assuming Arguendo She Was So Entitled, The Evidence Conclusively Establishes That Plaintiff Never Requested An Accommodation For Any Of Her Alleged Impairments At Issue Here***

Federal Regulations require employers to make reasonable accommodations to known physical or mental limitations of a *qualified* disabled employee "unless the agency can demonstrate the that the accommodation would impose an undue hardship on the operation of its program." 29 C.F.R. § 1614.203(c); *see also* 38 C.F.R. § 18.412(a). To fall within the protection of the Rehabilitation Act, Johnston must first prove that at the time she requested the accommodation, she had a disability as defined by the Act. *See Terrell v. USAir,* 132 F.3d 621, 624 (11th Cir.1998)(plaintiff must first make prima facie case showing he is disabled before issue of reasonable accommodation can be considered); *see also Coleman v. Keebler, Co.,* 997 F.Supp. 1102 (N.D.Ind.1998)(no obligation to accommodate the medical impairments of an employee who is not in fact disabled); *Schwertfager v. City of Boynton Beach,* 42 F.Supp2d 1347, 1358 (S.D.Fla.1999)(employer may be liable for not making reasonable accommodation to the known physical or mental limitations of an otherwise qualified individual with a disability). Logic and law dictate that as this Court has determined that Johnston is not in fact disabled within the meaning of the Rehabilitation Act, she cannot be entitled to reasonable accommodation.

Assuming *arguendo* that Johnston was entitled to reasonable accommodation, the evidence in this case conclusively establishes that Johnston never requested an accommodation for any of her impairments alleged here. Under these circumstances summary judgment on Johnston's disability claim is warranted. *See Gaston v. Bellingrath Gardens & Home, Inc.,* 167 F.3d 1361, 1363 (11th Cir.1999)(affirming summary judgment where the evidence conclusively established that no reasonable accommodation was requested and holding that a plaintiff cannot establish a claim either under the Rehabilitation Act or under the ADA "alleging that the Defendant discriminated against him by failing to provide a reasonable accommodation unless he demanded such an accommodation.") (citation omitted). At paragraph 14, subparagraph h of her Complaint Johnston alleges that the Postal Service violated the Rehabilitation Act when it failed to reasonably accommodate her disability by refusing to reassign her to another location despite Defendant's knowledge of her reasonable accommodation request. *Id.* Once again, Johnston fails to provide any evidence or facts in support of her allegation. Neither her Complaint nor her deposition shed any light on what accommodation Johnston requested, when she did so, and who refused her request. At her deposition Johnston was questioned regarding her alleged accommodation request. All she was able to supply was her recollection of a verbal/note request in August or September, 2000 to be reassigned because of supervisors allegedly screaming at her, stress, and lots of lines that irritated her. This clearly does not and cannot qualify as a request for accommodation. *See Willis v. Conopco, Inc.,* 108 F.3d 282 (11th Cir.1997)(plaintiff's burden of production requires her to identify an accommodation that would permit her to do the job and, as part of her burden of persuasion, prove that it was reasonable).

Johnston's sworn testimony at her deposition indicated that her alleged disability is post traumatic stress disorder. Now, however, in her Response in Opposition to Defendant's Motion, Johnston asserts that she requested reasonable accommodation for asthma. In response, this Court can only shake its judicial head in "so what" agreement. The record is uncontroverted that at one point Johnston requested to work in a less dusty area due to alleged problems with asthma and allergies. In response the Postal Service conducted an environmental scan of the area of which she complained. This resulted in a finding that the area in which she worked was no more dusty than other areas of the facility. Apart from the fact that Johnston's request to be relocated due to dust is entirely unrelated to any such request for reasonable accommodation for PTSD, courts have long held that the duty to reasonably accommodate does not require an employee to provide an irritant-free work environment. *See Buckles v. First Data Resources*, 176 F.3d 1098, 1101 (8th Cir. 1999)(the ADA does not require employer to create a wholly isolated work space for an employee that is free from numerous possible irritants and to provide for unlimited absenteeism). Nevertheless, as Johnston concedes in her Response brief, after she complained of dust she was moved to a different area of the building acceptable to her. In summary, based upon the uncontroverted facts, the evidence of record and the relevant statutory provisions and case law, this Court finds that no rational trier of fact could possibly find for Johnson. The uncontroverted material issues of fact

in this case conclusively establish that Johnston is not disabled and therefore not entitled to reasonable accommodation and further, that even assuming *arguendo* she was so entitled, the record evidence is clear that Johnston never requested an accommodation for any of her alleged impairments at issue here.

### B. SUMMARY JUDGMENT ON PLAINTIFF'S RETALIATION CLAIM IS WARRANTED

**1. *Plaintiff Cannot Make Out a Prima Facie Case Of Retaliation In That The Incidents Complained Of Do Not, Viewed Individually Or Collectively, Amount To Adverse Action Or, To The Extent Any Adverse Action Exists, Plaintiff Has Failed To Establish A Causal Link***

Johnston asserts she has been retaliated against in violation of Title VII and the Rehabilitation Act by reason of her disability, as a result of her several EEO filings, and for pursuing her workers compensation benefits.[5] The undisputed facts and law make clear, however, that Johnston cannot establish a prima facie case of retaliation under either theory because she has suffered no adverse action or, to the extent any adverse action exists, she has failed to establish any causal link.

To establish a prima facie case of retaliation under Title VII a plaintiff must show: (1) that there was a statutorily protected participation or opposition; (2) that an adverse employment action occurred;

---

5. The Court notes that pursuing a claim for benefits under the Federal Employee's Compensation Act ("FECA"), 5 U.S.C. § 7902, 8101–93; 20 C.F.R. § 10.100(b), is not protected activity as defined either by Title VII or the Rehabilitation Act. 42 U.S.C. § 2000e– 3(a); 42 U.S.C. § 12203(a). Nevertheless, there is no dispute that Johnston has filed numerous EEO filings, which activity clearly constitutes participation in protected expression under both Title VII and the Rehabilitation Act.

and, (3) that there was a causal link between the participation or opposition and the adverse employment action. *Raney v. Vinson Guard Service, Inc.,* 120 F.3d 1192 (11th Cir.1997).[6] Once the plaintiff establishes a prima facie case of retaliation, the burden shifts to the employer to proffer a legitimate, non-discriminatory reason for the adverse employment action. *Holifield v. Reno,* 115 F.3d 1555, 1566 (11th Cir. 1997). The burden on the defendant is one of production only, and not persuasion. Once the defendant has presented this evidence, the presumption disappears, and the burden shifts back to plaintiff to show that the defendant's reason is a pretext for retaliation and that plaintiff was truly the victim of retaliation, which is the burden borne by plaintiff at all stages of the analysis. *Id.* Whether plaintiff has established a prima facie case of retaliation is a question of law. *See Hill v. Metropolitan Atlanta Rapid Transit Authority,* 841 F.2d 1533 (11th Cir.1988)(*citing Furnco Const.*

*Corp. v. Waters,* 438 U.S. 567, 576, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978)).

Summary judgment on this claim is warranted because Johnston cannot establish the second element of her prima facie case, namely, that she suffered an "adverse employment action". The acts about which Johnston complains appear at paragraph 14, subparagraphs (a)-(*o*) of her Complaint.[7] The vast majority of these claims are indeterminate or unsupported by any evidence. The claims which remain, even if proven, do not, viewed individually or collectively, amount to adverse action or, to the extent any adverse action exists, Johnston cannot establish a causal link sufficient to survive summary judgment.

Johnston has presented no evidence to support her assertion at paragraph 14, subparagraph (a) of her Complaint that insurance forms were filed improperly. In fact the only evidence relative to this claim has been submitted by the Defendant and

---

**6.** These elements are the same for a retaliation action under the Rehabilitation Act. In order to establish a claim of retaliation under the Rehabilitation Act, the plaintiff must establish: (1) statutorily protected expression; (2) adverse employment action; and (3) a causal link between the protected activity and the adverse action. *Stewart v. Happy Herman's Cheshire Bridge, Inc.,* 117 F.3d 1278, 1287 (11th Cir.1997).

**7.** Defendant argues that many of these alleged actions are time-barred. Because this Court finds that even assuming the actions complained of were timely filed they still fall under summary judgment, for purposes of the instant motion only this Court shall assume, without deciding, that each of these claims were timely filed.

Plaintiff's complaint paragraph 14 subparagraphs (a)-(*o*) asserts the following actions by Defendant: deliberate improper filing of insurance forms (subparagraph (a)); alteration of workers compensation records (subparagraphs (b) and (c)); denial of sick leave (subparagraph (d)); release of confidential medical records to the unemployment office during processing of Plaintiff's worker's compensation appeal (subparagraph (e)); institution of an unfounded collection action against Plaintiff when her worker's compensation claim was being appealed (subparagraph (f)); incorrect processing of Plaintiff's FMLA forms (subparagraph (g)); failure to reasonably accommodate Plaintiff (subparagraph (h)); unfounded notice of warning (subparagraph (i)); deliberate error in Plaintiff's pay and reduction of Plaintiff's grade level and pay (subparagraphs (j) and (*l*)); sending of an unfounded notice to report claiming that Plaintiff had an unsubstantiated leave of absence from duty on November 24, 1998 (subparagraph (k)); close scrutiny of Plaintiff's work performance and conduct (subparagraph (m)); harassment (subparagraph (n)); and "other discriminatory conduct" (subparagraph (*o*)). Johnston has abandoned her claim at subparagraph (i) that she received an unfounded letter of warning. *See* Plaintiff's Depo. II, pp. 94–96.

is to the contrary. Patsy Banks, a manager in the district Injury Compensation Office testified that all forms were filed in accordance with routine procedure. *See* Bank's Depo., pp. 20,22,24,27–28 and 30. Moreover Ms. Banks testified that she wasn't even aware of Johnston's prior EEO activity. *Id.*

The same is true of Johnston's allegation at paragraph 14, subparagraphs (b) and (c) that worker's compensation records were improperly altered. Lancy Rocker, an employee in the Injury Compensation Office who was assigned to Investigate Johnston's worker's compensation claim, made changes on the supervisor's controversion section of the CA–1 claim form, including noting that the agency controversion was attached. Johnston was provided a copy of the form. By letter stamped January 14, 2000, Supervisory Claims Examiner Bonnie Hinton informed Johnston that there is no provision in the FECA that prohibits an employer from changing or adding to a supervisor's statement on a claim form. Additionally, the Office of Worker's Compensation (OWCP) informed Johnston that her forms were not altered improperly. *See* Ex, 1 to Defendant's Motion for Summary Judgment, p. 28; Banks Depo., pp. 30–31.

Most significantly is the fact that even if the above allegations were true, there is no evidence that Johnston ever received a reduction in pay or benefits to which she was entitled as a result of the alleged improper filing and alteration. *See Malladi v. Brown,* 987 F.Supp. 893, 914–17 (M.D.Ala.1997) (fact that employer may have unreasonably delayed responding to employees written request for an EEOC counselor's report and may have inappropriately referred plaintiff's charges to the VA central office for procedural review did not constitute "adverse employment action," for purposes of establishing prima facie case of retaliation; "Although these actions may conceivably have some bearing on the EEO processes to which they relate, this has no bearing on Malladi's salary, benefits, or position, and thus cannot support a charge of retaliation."); *Boyd v. Brookstone Corp.,* 857 F.Supp. 1568, 1573 (S.D.Fla.1994)(finding that alleged actions in obtaining manufactured evidence, and submitting the evidence to the EEOC did not constitute an adverse employment action because the past, present or future terms and conditions of plaintiff's employment were not altered).

The Complaint alleges at paragraph 14, subparagraph (g), that Family Medical Leave Act ("FMLA") forms were not processed correctly and were improperly delayed. There is no administrative EEO complaint in the record which provides any information about this allegation nor has Johnston provided any specifics by way of deposition testimony, evidence of record or even allegations raised in her responsive pleading. In view of the absence in the record of any information identifying the basis of this claim, such claim must fail.

Johnston's allegation at paragraph 14, subparagraph (f), that an unfounded collection action was instituted against her when her worker's compensation claim was being appealed also has no basis in reality. The record is undisputed that Johnston received a notice of decision from the Department of Labor denying her worker's compensation claim and informing her that continuation of pay (COP) would be charged to her sick and/or annual leave balance or treated as an overpayment. *See* Ex. 2 to Defendant's Motion for Summary Judgment, p. 30. The gravamen of Johnston's claim is that Defendant recov-

ered the COP payments even though she appealed her worker's compensation denial and in so doing violated the debt collection stay provision of Section 462.42 of the Employee Labor Relations Manual ("ELM"). However, the evidence of record conclusively establishes that Johnston was afforded the full protection of Section 462.43 of the ELM pending her worker's compensation appeal and that the money recovered from Johnston during the relevant time period was an erroneous double payment from worker's compensation and not money that was improperly withheld. *See* Kessman Depo., pp. 6–8, 16–17. Based on the evidence of record no reasonable jury could find otherwise. Additionally, there is no evidence that Ms. Kessman or anyone else in the Post Office Accounting Branch was aware of or took any action based upon Johnston's prior EEO complaints.

Johnston's allegation at paragraph 14, subparagraph (h) that Defendant failed to accommodate her, suffers the same fate as the ones before it. As discussed previously in the section addressing Johnson's disability claim, the evidence in this case conclusively establishes that Johnston never requested an accommodation for the disability identified in her Complaint of post traumatic stress disorder. Neither her Complaint nor her deposition testimony shed any light on what accommodation Johnston requested, when she did so, and who refused her request. When questioned about her alleged accommodation request at her deposition, all Johnston was able to supply was her recollection of a verbal/note request in August or September, 2000 to be reassigned because of supervisors allegedly screaming at her, stress, and lots of lines that irritated her. This clearly does not and cannot qualify as a request for accommodation. Johnston's

"eleventh hour" contention, raised for the first time in her Response brief, that Defendant failed to accommodate her request to be moved to a less dusty environment due to her asthma, likewise falls flat. As Johnston herself concedes in her Response brief, after she complained of dust she was moved to a different area of the building acceptable to her. In short, Johnston's conclusory assertion that Defendant failed to accommodate her is so devoid of factual and evidentiary support it hardly deserves consideration.

Johnston's most significant allegation appears at paragraph 14, subparagraphs (j) and (*l*). In these paragraphs Johnston alleges that there was a deliberate error made in her pay resulting in a grade and pay reduction. Clearly, if such were the case, this act would constitute an "adverse action." *See Wu v. Thomas,* 996 F.2d 271, 273–74 (11th Cir.1993)(generally the "terms and conditions" of a plaintiff's employment are affected by a loss of salary, benefits or position). Here, however, the record is clear that the reduction in pay in Johnston's case was completely unrelated to any protected activity she engaged in. In 1994, Johnston was reverted to a "level 5" position, but along with hundreds of other employees, was inadvertently placed as a "step 5E rather than 5D." A Post Office Task Force (comprised of employees from throughout the United States) was set up to correct thousands of these placements in accordance with the national union contract and eventually an arrangement was reached between management and the union. *See* Shannon Depo., p. 11. Johnston was one of hundreds who had her pay adjusted as a result of the Task Force action. *Id.* The record is undisputed that the Task Force making the corrections had no knowledge of Johnston's protected activity. Based on the undisputed

record evidence no reasonable jury could find a causal connection between Johnston's reduction of grade and pay and the protected activity she engaged in. While it's true the burden on Johnston to prove causation for purposes of her prima facie case is slight, *Holifield,* 115 F.3d at 1566 ("[t]o meet the causal link requirement, the Plaintiff 'merely has to prove that the protected activity and the negative employment action are not completely unrelated.' ") (citation omitted), it is not nonexistent. Here, there is absolutely no evidence upon which a reasonable trier of fact could find a causal connection between Johnston's reduction in grade and pay and her protected activity. *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348 (where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial).

The remaining allegations do not, viewed individually or collectively amount to "adverse action" under either Title VII or the Rehabilitation Act. "An adverse employment action is an ultimate employment decision, such as discharge or failure to hire, or other conduct that alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee." *Gupta v. Florida Bd. of Regents,* 212 F.3d 571, 587 (11th Cir.2000), *cert. denied,* —— U.S. ——, 121 S.Ct. 772, 148 L.Ed.2d 671 (2001). Whether an employee has suffered an adverse employment action is normally considered on a case-by-case basis. *Id.* at 586. It is clear, however, that not all conduct taken by an employer which causes a negative affect on an employee constitutes adverse employment action. *Davis v. Town of Lake Park,*

*Florida,* 245 F.3d 1232, 2001 WL 289882 *5 (11th Cir.2001). There must be "some threshold level of substantiality that must be met for unlawful discrimination to be cognizable." *Wideman v. Wal–Mart Stores, Inc.,* 141 F.3d 1453, 1456 (11th Cir.1998). "This limitation is consistent with the basic principle that Title VII...is neither a general civility code nor a statute making actionable the 'ordinary tribulations of the workplace.' " *Davis,* 245 F.3d at 1239(quoting *Gupta,* 212 F.3d at 587); *see also Wu v. Thomas,* 996 F.2d 271, 273–74 (11th Cir.1993)(noting that an adverse action does not result from every unkind act, even those without economic consequences). In *Davis,* the Eleventh Circuit emphasized that for an employment action to be adverse it "must impact the 'terms, conditions, or privileges' of the plaintiff's job in a real and demonstrable way." 245 F.3d at 1239. While proof of direct economic consequences is not required in all cases, "the asserted impact cannot be speculative and must at least have a tangible adverse effect on the plaintiff's employment." *Id.* Thus, to prove an adverse employment action "an employee must show a *serious and material* change in the terms, conditions, or privileges of employment." *Id.* (emphasis in original). In determining whether a "serious and material" change in the terms, conditions, or privileges of employment has been established, *Davis* Instructs the court to disregard the plaintiff's subjective view of the significance and adversity of the employer's action: "[T]he employment action must be materially adverse as viewed by a reasonable person in the circumstances." *Id.* (citation omitted).

The remaining actions about which Johnston complains consist of: improper

denial of sick leave [8]; unauthorized release of confidential medical records [9]; issuance of an unfounded notice to report questioning Johnston's leave of absence from duty on November 24, 1998 [10]; unspecified allegation of harassment [11]; and "other discriminatory conduct." [12] This Court is convinced that no reasonable person could view these actions, whether individually or collectively, as having a "serious and material change in the terms, conditions, or privileges of employment." *Davis*, 245 F.3d at 1239. This is so even if one wishes to additionally consider the other alleged actions previously found by this Court to have no basis in fact, to wit, improper filing of insurance forms, improper alteration of worker's compensation records, institution of an unfounded collection action, incorrect processing of FMLA forms, failure to accommodate, and issuance of an unfounded notice to report. Even were this Court to collectively consider the above-stated actions for which we have found no basis in the record with the remaining allegations of employer misconduct listed above, no reasonable person could possibly find these actions, individually or collectively, of sufficient substantiality to merit an "adverse employment action." Accordingly, and finding no material issues of fact or law in existence, summary judgment on this claim is warranted.

### 2. Even If Plaintiff Could Establish A Prima Facie Case Of Retaliation, Summary Judgment Is Still Warranted Based On The Strength Of The Defendant's Legitimate Non–Discriminatory Reasons For Its Actions And Because Plaintiff Cannot Show That These Actions Were A Pretext For Discrimination

Assuming *arguendo* that Johnston could establish a prima facie case of retaliation, summary judgment on this claim would still be warranted based on the strength of the Defendant's legitimate non-discriminatory reasons for its actions and because Johnston cannot show that these actions were a pretext for discrimination. As noted previously, once the plaintiff establishes a prima facie case of retaliation, the burden shifts to the employer to proffer a legitimate, non-discriminatory reason for the adverse employment action. *Holifield v. Reno*, 115 F.3d 1555, 1566 (11th Cir. 1997). The burden on the defendant is one of production only, and not persuasion. Once the defendant has presented this evidence, the presumption disappears, and the burden shifts back to plaintiff to show that the defendant's reason is a pretext for retaliation and that plaintiff was truly the victim of retaliation, which is the burden borne by plaintiff at all stages of the analysis. *Id.* Inasmuch as the burden is on the plaintiff to establish pretext, "he must present 'significantly probative' evidence on the issue to avoid summary judgment." *Isenbergh v. Knight–Ridder Newspaper Sales, Inc.*, 97 F.3d 436, 444 (11th Cir. 1996), *cert denied*, 521 U.S. 1119, 117 S.Ct. 2511, 138 L.Ed.2d 1014 (1997) (citations omitted).

8. Compl. paragraph 14, subparagraph (d).

9. Compl. paragraph 14, subparagraph (e).

10. Compl. paragraph 14, subparagraph (k).

11. Compl. paragraph 14, subparagraph (n).

12. Compl. paragraph 14, subparagraph (o).

At paragraph 14 subparagraphs (a)-(o) of her Complaint Johnston has complained of numerous Instances of retaliation. For each and every one of these alleged acts of retaliation Defendant has articulated specific, legitimate reasons for its actions. *See* Defendant's Motion for Summary Judgment, pp. 22–27. For her part Johnston has failed to come forward with even a scintilla of evidence indicating that Defendant's articulated reasons are mere pretext for intentional discrimination or retaliation. Instead, Johnston's sole response to Defendant's detailed reasons for its actions is her reassertion, in conclusory fashion, that "worker's compensation records were altered, ... sick leave [was denied],...an unfounded collection action [was instituted],...FMLA forms were not processed correctly and deliberately delayed,...Defendant failed to timely, reasonably accommodate Plaintiff,...a deliberate error made in Plaintiff's pay,...Plaintiff was sent an unfounded notice to report,...and reduced grade and pay of Plaintiff." Plaintiff's Response Brief, p. 14. Johnston supports these conclusory allegations with a self-serving affidavit in which she provides an opinionated narrative of perceived discriminatory events. *See Johnston Aff.*, attached as Exhibit 2 to Plaintiff's Response Brief. As Defendant correctly observes, conclusory statements of this type do not satisfy Johnston's burden of establishing pretext for intentional retaliation or discrimination. *Isenbergh,* 97 F.3d at 444 ("Conclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where [a defendant] has offered extensive evidence of legitimate, non-discriminatory reasons for its actions."; Since "the plaintiff bears the burden of establishing pretext...he must

present 'significant probative' evidence...to avoid summary judgment.") (citation omitted). Here, not only has Johnston failed to provide "significant probative" evidence on the issue, she has failed to present any evidence at all. Under these circumstances, summary judgment is mandated.

## C. SUMMARY JUDGMENT ON PLAINTIFF'S HOSTILE ENVIRONMENT CLAIM IS WARRANTED

 Hostile environment harassment occurs "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victims employment.'" *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)(quoting *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 65, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)). Hostile environment claims based upon a disability are analyzed under the Title VII standards applicable to sexual harassment claims. *See Rio v. Runyon,* 972 F.Supp. 1446, 1459 (S.D.Fla.1997). In order to establish a hostile environment claim, the plaintiff must show that: (1) he or she is a member of a protected class; (2) he or she was subject to unwelcome harassment; (3) the harassment was based on his or her disability; and, (4) the harassment was severe and pervasive enough to affect a term, condition, or privilege of employment. *Id.* (citing *Henson v. City of Dundee,* 682 F.2d 897, 903–05 (11th Cir.1982)). "In determining whether an environment is hostile or abusive, the court should consider: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance;

and, (4) whether it unreasonably interferes with an employees work performance." *Prado v. L. Luria & Son, Inc.,* 975 F.Supp. 1349, 1355 (S.D.Fla.1997). In making this determination the standard to be applied is one of objective reasonableness under the circumstances and should not be based solely on the employees subjective feelings. *Id.* Additionally, in determining whether a plaintiff has established a claim for hostile environment, the actions of the supervisors and co-workers can be imputed to the defendant employer. *See Rio,* 972 F.Supp. at 1459.

■ Because Johnston is not disabled, it follows that she can not establish a prima facie case of hostile work environment based upon a disability. However, even if this Court were to find Johnston disabled, summary judgment on this claim would still be warranted as the conduct complained of was not so severe and pervasive that it "affected a term, condition or privilege of employment." In *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) the Supreme Court substantially narrowed the scope of actionable hostile environment claims: "[A]busive conduct that is not severe or pervasive enough to create objectively hostile or abusive work environment is beyond Title VII's purview, as is conduct that victim does not subjectively perceive as abusive". *Id.* at 21–22, 114 S.Ct. 367. As the Supreme Court more recently explained in *Faragher v. City of Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998), "simple teasing...offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'...We have made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment...." *Id.* at 788, 118 S.Ct. 2275.

In the instant case Plaintiff cannot establish that any alleged harassment was so severe or pervasive "that it affected a term, condition or privilege of employment." *Harris,* 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295. The vast majority of actions about which Johnston complains involve actions Defendant allegedly took which have nothing whatsoever to do with the terms and conditions of her employment. None of the conduct complained of in subparagraphs (a)-(c) and (e)-(g), deliberate improper filing of insurance forms, alteration of workers compensation records, release of confidential medical records to the unemployment office during processing of Plaintiff's worker's compensation appeal, institution of an unfounded collection action against Plaintiff when her worker's compensation claim was being appealed and incorrect processing of Plaintiff's FMLA forms, impacted upon or in any way related to the "terms and conditions" of Johnston's employment. The remainder of the allegations, to the extent they are supported by any evidence at all, are simply not severe or pervasive enough to constitute a hostile environment. Furthermore the record evidence conclusively establishes that in none of the instances for which there exists evidentiary support, was Johnston denied benefits to which she was lawfully entitled.

At worst Defendant's conduct caused Johnston to suffer "inconveniences" in the form of benefit delays; it certainly does not rise to the level of a hostile environment. As proof of this fact the undersigned points the reader to the following cases in which courts have refused to characterize work environments as hostile even in situations in which there are some indi-

cia of harassing or discriminatory conduct. *See, e.g., Skouby v. Prudential Ins. Co.,* 130 F.3d 794, 797 (7th Cir.1997)(female employee's allegations that she was presented with drawings of male coworker that included references to love or marriage, that she was subjected to constant unwelcome sexual references, that male coworkers talked about going to striptease clubs and had football brochures that featured provocatively dressed woman on the cover, and that males were given information and assistance with planning sales calls and were regularly assisted by their managers, while she was not, were not sufficiently severe or pervasive to create hostile working environment under Title VII); *Black v. Zaring Homes, Inc.,* 104 F.3d 822 (6th Cir.1997)(male co-workers' sex-based comments in female employee's presence were insufficiently severe or pervasive to create objectively hostile work environment in violation of Title VII; even if employee was personally hurt, crushed, and devastated by comments, comments were merely offensive and were not directed at employee), *cert. denied,* 522 U.S. 865, 118 S.Ct. 172, 139 L.Ed.2d 114 (1997); *Baskerville v. Culligan International Co.,* 50 F.3d 428, 430–31 (7th Cir.1995)(no sexually hostile work environment where supervisor engaged in "occasional vulgar banter, tinged with sexual innuendo."); *Stoeckel v. Environmental Management Systems, Inc.,* 882 F.Supp. 1106, 1114 (D.D.C.1995)(no sexually hostile work environment where supervisor commented upon plaintiff's dress as well as his own dating life, touched plaintiff's neck, shoulder, or clothing on at least two occasions, and made an effort to kiss plaintiff); *DeAngelis v. El Paso Municipal Police Officers Association,* 51 F.3d 591 (5th Cir.1995)(anonymous comments in police association's newsletter directed toward fe-

male police officer and toward female officers in general were not so frequent, pervasive, or pointedly insulting as to create hostile working environment under Title VII; four printed derogatory references to officer at irregular intervals in two and one-half years did not evince sufficient hostility toward her as matter of law). It is manifest that if the plaintiffs in the above-cited cases could not establish a hostile working environment, then Johnston cannot do so here either. For the above-stated reasons and finding no material issues of fact or law in dispute, Defendant is entitled to summary judgment on Johnston's hostile environment claim. In accordance with the above and foregoing, it is hereby,

**ORDERED AND ADJUDGED** that Defendant's Motion For Summary Judgment (D.E.# 22) is **GRANTED.** Final Judgment is hereby entered in favor of Defendant and against Plaintiff on all claims and this case is closed. The clerk's Office is hereby directed to deny any pending motions as moot.