**Harriet MASON, Plaintiff,**

**v.**

**CITY OF TAMPA, et al., Defendants.**

**No. 8:99–CV–762–T–17E.**

United States District Court,
M.D. Florida,
Tampa Division.

Dec. 1, 2000.

Robert E. Taylor, Jr., Law Office of Robert E. Taylor, Jr., P.A., Tampa, FL, for plaintiff.

Harriett Mason, Tampa, FL, pro se.

Thomas M. Gonzalez, Arnold B. Corsmeier, Thompson, Sizemore & Gonzalez, P.A., Tampa, FL, for defendants.

## ORDER ON PLAINTIFF'S AND DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

KOVACHEVICH, Chief Judge.

THIS CAUSE comes before the Court on Plaintiff's Dispositive Motion for Summary Judgment, (Dkt.19), and Memorandum in Support thereof, and Defendants' Motion for Summary Judgment and Supporting Memorandum of Law, (Dkt.20), pursuant to Federal Rules of Civil Procedure 56. Plaintiff and Defendants filed Responses, respectively, on September 25, 2000, (Dkt.27), and September 28, 2000. (Dkt.28).

## I.

## STANDARD OF REVIEW

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A material fact is one which "might affect the outcome of the suit under the governing law." *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine issue exists where the record, taken as a whole, contains evidence

"such that a reasonable jury could return a verdict for the nonmoving party." *See id.*

Once the moving party has met its burden of showing the non-existence of a genuine issue of material fact, the non-moving party must go beyond the pleadings to show that a genuine issue indeed exists for trial. *See Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. It is the Court's responsibility to examine the evidence in the record to determine whether there is a genuine issue for trial. *See Anderson,* 477 U.S. at 249, 106 S.Ct. 2505. If, upon examination, the evidence is not probative and the non-moving party fails to show the existence of a genuine issue, then summary judgment should be granted. *See id.; see also Celotex,* 477 U.S. at 324, 106 S.Ct. 2548.

## II.

### PROCEDURAL HISTORY

On December 7, 1998, Plaintiff filed a charge of discrimination with the United States Equal Employment Opportunity Commission (EEOC). (Dkt.26). Plaintiff's EEOC complaint alleges that the Defendants subjected her to adverse terms and conditions of employment based upon race and sex, while treating other similarly situated white male officers more favorably. (Dkt.26). Further, Plaintiff alleges that after her husband complained to the Mayor's office, and after filing a discrimination complaint with the Tampa Office of Human Rights, Defendants retaliated against her for engaging in statutorily protected activity. (Dkt.26). On December 31, 1998, the EEOC mailed a Dismissal and Notice of Right to Sue letter to Plaintiff. (Dkt.26).

Plaintiff timely filed a Complaint and Demand for Jury Trial with this Court on April 1, 1999, alleging the following four counts: Count I, Violation of 42 U.S.C. § 1981; Count II, Race Discrimination in Violation of Title VII of the Civil Rights Act; Count III, Hostile Work Environment; and Count IV, Constructive Discharge. (Dkt.1). This Court will assume that Count I was inadvertently entitled " § 1981" and was intended to be entitled " § 1983" as referenced in Plaintiff's allegations contained in paragraph 27. (Dkt.1).

On May 24, 1999, Plaintiff filed an Amended Complaint, which was the Complaint served upon the City of Tampa (City). (Dkt.3). On February 2, 2000, (Dkt.10), this Court granted attorney Robert E. Taylor's Motion to Withdraw as Counsel for Plaintiff. Consequently, Plaintiff filed a Notice of Intent to Appear Pro Se on February 24, 2000, and has been representing herself since that time. (Dkt.13). On March 17, 2000, Plaintiff filed an unopposed Second Amended Complaint adding a retaliation claim against Defendants. (Dkt.16).

In addressing Defendants' concerns regarding Plaintiff's violation of Local Rule 3.01(c), and Plaintiff's improper recitation of the legal standard for reviewing the evidence, this Court will review Pro Se Plaintiff's pleadings in a more lenient manner than those drafted by attorneys. Thus, Plaintiff's errors, with regard to Local Rule 3.01(c) and the alleged improper recitation of the legal standard, are excused by this Court.

## III.

### FACTUAL BACKGROUND

The following facts, taken from the pleadings and exhibits, are assumed as

true for purposes of the filed motions. Plaintiff, who is a black female, began working for the City in December of 1986 as an Accounting Clerk. (Mason Depo. at 24). After leaving her position, of approximately four (4) years, as an Accounting Clerk with the City, Plaintiff returned in September of 1994, to work as a police officer in District II of the police department. (Mason Depo. at 36). In June 1996, Plaintiff was transferred to a night-shift position in the Firehouse Community–Oriented Policing Program ("COP"). (Mason Depo. at 37, 38). Some time thereafter, Plaintiff applied and received one (1) of two (2) day-shift positions. (Mason Depo. at 45, 49).

In March of 1998, the Tampa Police Department underwent a reorganization. As a result of this reorganization, the two (2) day-shift positions that were assigned to the Community Affairs Bureau were assigned back to other CPO officers. (Mason Depo. at 49, 50). Two (2) white employees, Officer Rojka and Officer Paz, filled the two (2) day-shift positions that were transferred out of the Community Affairs Bureau. (Mason Depo. at 50, 57). Officer Paz eventually left the position, and, thereafter, Plaintiff and Officer Rojka held the two (2) day-shift positions. However, Officer Paz later requested a transfer back to the day-shift position due to "personal reasons," and Defendants granted this request. As a result, Plaintiff was transferred to a night-shift position. (Mason Depo. at 50, 57). Plaintiff subsequently complained to Sgt. Counsman and Lt. McNamara concerning this transfer. (Mason Depo. at 50, 53, 56).

In March of 1998, Plaintiff's husband complained to the Mayor's Office about Plaintiff's perceived mistreatment. (Mason Depo. at 51, 85). Initially, Plaintiff's, and Plaintiff's husband's, complaints were communicated to Deputy Chief Buschnell, who assured Plaintiff that she would obtain a day-shift position. (T. Mason at 29). In addition, Plaintiff's husband spoke with Deputy Chief Taylor, but in neither conversation did Plaintiff's husband allegedly express a concern that Plaintiff's mistreatment was racially motivated. (T. Mason Depo. at 46).

A few weeks after the initial complaints, Plaintiff's husband spoke with Assistant Mayor Curtis Lane (who is black) and complained that he was not permitted to see Chief Holder. (T. Mason Depo. at 34). Plaintiff's husband also told Mr. Lane that he thought his wife was being treated unfairly possibly due to race discrimination. (T. Mason Depo. at 46).

On June 23, 1998, Plaintiff was notified that on June 30, 1998, she would receive a transfer back to a regular patrol assignment. (Mason Depo. at 101, 105–06). On that same day, Plaintiff was given a letter of counseling for violation of department policy because Plaintiff allegedly failed to report an illness, and Plaintiff was told by Lt. McNamara, a supervisor, at this time, that "he didn't think she was capable of being a fire shift officer or a COP officer." (Mason Depo. at 106). Consequently, Plaintiff was transferred back to the patrol division in District II on the 7:00 p.m. to 7:00 a.m. shift under Sgt. Pricher's supervision. (Mason Depo. at 111–12).

After working seven (7) shifts, Plaintiff went on an approved vacation. (Mason Depo. at 113). Upon returning from vacation, Plaintiff was given a memorandum written by Sgt. Pricher describing five (5) incidents that occurred between July 8 and July 11, 1998, that related to Plaintiff's job performance, and called into question her fitness for duty. (Dkt.20). Sgt. Pricher's

memorandum also stated that Plaintiff "violated Department Policy as it related to Untruthfulness, Insubordination, Cowardice, Attention to Duty, and Incompetence." (Pricher memo. at 9). Plaintiff denied these allegations during a meeting and did not make any accusations of racial motivation. (Mason Depo. at 129, 131). Plaintiff was transferred to administrative duty "on the desk" as a result of Plaintiff's alleged violations. (Mason Depo. at 129).

Plaintiff provided a written response to Captain Stanley addressing the allegations made against her. (Mason Depo. at 139, 164). Captain Stanley responded to Plaintiff that he would place her on another squad. (Mason Depo. at 164). However, Plaintiff requested that she remain on the same squad with Sgt. Pricher while the investigations were pending. (Mason Depo. at 167). Eventually, Plaintiff was placed with another squad under the supervision of Sgt. Mimms and received three (3) notices of disciplinary action. (Mason Depo. at 179, 181–83, 206–07, 212–17). The first notice was issued for Plaintiff's failure to report a shoplifting incident; the second notice was issued for tardiness and violating dress code policy; and the third notice was a one-day suspension after an investigation revealed that Plaintiff had lied about her handling of a domestic dispute call. (Mason Depo., Ex. 3, 6, 7).

On October 19, 1998, Plaintiff filed a complaint with the City, Office of Human Rights, alleging race and sex discrimination in violation of Section 12–16, Chapter 12, City of Tampa Code (Human Rights Ordinance). (Dkt. 26, City of Tampa Comp.). On December 7, 1998, Plaintiff filed a Charge of Discrimination with the EEOC. (Dkt.26). Plaintiff resigned from employment with the City on February 12, 1999. (Mason Depo. at 274). The City advised Plaintiff of her right to file a discrimination complaint with the EEOC and the Florida Commission on Human Relations.

On August 3, 1998, Plaintiff went to the Internal Affairs Division to charge various officers with "untruthfulness." (Mason Depo. at 248–49). Plaintiff did not submit written allegations to the Internal Affairs Division until November 8, 1998. (Mason Depo. at 250). On November 24, 1998, Sgt. Terrel responded to Plaintiff's allegations by telephone, and advised Plaintiff that an investigation would not be initiated because "they felt that the allegations in plaintiff's complaint were a matter of perception." (Mason Depo. at 251).

## IV.

## DISCUSSION

### I. Plaintiff's Dispositive Motion for Summary Judgment

#### A. Count II—Race Discrimination

In order to establish a *prima facie* case of disparate treatment based upon race, a plaintiff must prove that: (1) she is a member of a protected class; (2) she was subjected to adverse employment action; (3) her employer treated similarly situated white officers more favorably; and (4) she was qualified to do the job. *See McDonnell Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Further, a plaintiff proves intentional race discrimination by showing that but for the plaintiff's race, the defendant would not have taken the same action. *See McNely v. Ocala Star–Banner Corp.*, 99 F.3d 1068, 1077 (11th Cir.1996).

Plaintiff satisfies the first element of the *prima facie* case because Plaintiff is

a black female. Moreover, Defendants do not dispute that Plaintiff was qualified to perform her job. Thus, two (2) elements remain for this Court's consideration with regard to Plaintiff's Dispositive Motion for Summary Judgment on Count II.

█ Regarding the second element, Plaintiff argues that she was subjected to adverse employment action when she was transferred from the day-shift to the night-shift, taken off street duty and assigned to desk duty, and denied a transfer to the day-shift. (Dkt. 26, EEOC Comp.). Plaintiff offers two (2) sworn statements by Lt. Miller as evidence that the transfer from the day-shift to the night-shift constituted an adverse employment action: (1) the statement that "... when you are promoted to Corporal, generally you go to the bottom of the list and go to the late-shift"; and (2) the statement that "... the majority of the senior officers rotate the day-shift just because they feel they have done their time on the late-shift." (Dkt.19).

Defendants do not cite any evidence in opposition to Plaintiff's assertion of an adverse employment action. Further, upon examination of Lt. Miller's deposition, this Court finds that Plaintiff satisfies this element, and no genuine issue exists for trial.

█ With regard to the third element, Plaintiff's own motion cites the Defendants' response to the City of Tampa's Office on Human Rights' "Request for Information" regarding Plaintiff's discrimination charge filed with that office on October 20, 1998. (Dkt.19). Specifically, the City's Office on Human Rights asked Defendants to "provide any available information comparing the treatment of the Charging Party to similarly situated employees of a different race and sex, who have been assigned to a night-shift from a day-shift for similar reasons as those causing the Charging Party to be assigned from day-shift." (Dkt.19). Defendants responded to this request by stating that when the Firehouse Community Oriented Policing Squad first began, all of the slots were designated as night-shift positions. (Dkt.19). As the program continued, three (3) slots were created for day-shift officers. (Dkt.19). Mrs. Mason, Officer Roy Paz (white male), and Officer Samuel Rojka (white male), were assigned to the day-shift positions. (Dkt.19). However, after a restructuring of the Department, all three (3) officers were transferred back to the night-shift. (Dkt.19).

After thoroughly reviewing the record of this case, the Court finds that Plaintiff fails to carry her burden to show that she was similarly situated in all relevant aspects to other white officers, including Officer Paz. Accordingly, because Plaintiff has failed to prove the non-existence of a genuine issue of material fact, summary judgment for Plaintiff is improper as a matter of law.

## B. Count III—Hostile Work Environment

█ The Supreme Court has recognized an actionable claim for the existence of a hostile work environment based upon race. *See Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 65–66, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). Further, courts harmoniously apply the same standards used for alleged sexual harassment to racial harassment claims. *See Faragher v. City of Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275, 2283, n. 1, 141 L.Ed.2d 662 (1998); *see also Rogers v. EEOC,* 454 F.2d 234 (5th Cir.1971). In determining whether harassment is objectively "hostile or abusive" the following factors are analyzed:

(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating or merely an offensive utterance; and (4) whether the conduct unreasonably interferes with an employee's work performance. *See Harris v. Forklift Systems Inc.*, 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993).

Plaintiff alleges in her Second Amended Complaint that she was forced to resign from the Tampa Police Department because she was subjected to a hostile work environment. (Dkt.16). Further, Plaintiff asserts in her Dispositive Motion for Summary Judgment that she was subjected to "severe and pervasive conduct." (Dkt.19). However, as Defendants argue, Plaintiff merely provides conclusory statements that she was subjected to a hostile work environment without citing any supportive evidence.

Plaintiff states that after transferring to Squad 66 under the supervision of Sgt. Pricher, Plaintiff was "alienated by co-workers and was never made to feel a part of this all White squad." (Dkt.19). Additionally, Plaintiff asserts that she was subjected to humiliation and embarrassment when Sgt. Pricher told her, in front of a white female co-worker, that she "could not hear or had bad listening skills." (Dkt.19). Plaintiff also asserts that Lt. Miller stated that there was a "possibility of a hostile work environment," however, upon review of Lt. Miller's deposition, this Court finds that Plaintiff's assertion is a misleading and inaccurate recitation of Lt. Miller's statement. Moreover, Plaintiff admits that she never heard any supervisors use racial epithets. (Mason Depos. at 201).

This Court finds that Plaintiff has not only failed to offer any evidence of severe and pervasive conduct by Defendants, but has failed to allege sufficient facts to support such a claim. All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *See Hayden v. First Nat'l Bank of Mt. Pleasant*, 595 F.2d 994, 996–97 (5th Cir.1979). Therefore, summary judgment in favor of Plaintiff is improper.

## C. Count IV—Retaliation

■ In order to establish a *prima facie* case of retaliation, a plaintiff must prove that: (1) he/she engaged in a statutorily protected activity; (2) an adverse employment action was taken; and (3) a causal link exists between the protected expression and the adverse action. *See Goldsmith v. City of Atmore*, 996 F.2d 1155 (11th Cir.1993).

■ Plaintiff asserts that her husband's complaint to the Mayor's office about alleged discriminatory practices, and Defendants' subsequent transfer of Plaintiff three (3) months later to a night-shift position constituted retaliation by Defendants. (Dkt.19). Plaintiff offered evidence that Mr. Mason told Mayor Curtis Lane that he "felt that they was [sic] moving her out of her position to put Roy (Officer Paz) in the position, which is a white officer [sic] . . . ." (Dkt.24, 46).

Defendants respond by stating that in Mayor Lane's Response to the Request for Admissions, Mayor Lane denied the allegation that Plaintiff's husband mentioned anything about race discrimination in their discussions. (Dkt.28). Defendants also respond that Plaintiff failed to establish that the supervisors who "took action" were aware that a racial discrimination complaint had been made by Plaintiff's husband. (Dkt.20). To support this De-

fendants offer Sgt. Pricher's testimony which states that he did not have knowledge of any complaint of discrimination made by plaintiff, or her husband, to the EEOC, the Tampa Office of Human Rights, the Mayor's office, or the Chief's office. (Pricher Depo. at 97).

Additionally, Defendants assert that Lt. McNamara admitted that he became aware "at some point" that a complaint had been made to the Mayor's Office about Plaintiff's transfer to the day-shift, but could not recall whether he learned of this "in March 1998, or at some other time." (Dkt.28). Thus, a genuine issue of material fact exists regarding whether Defendants' alleged adverse actions were causally related to Plaintiff's alleged statutorily protected expression. Accordingly, summary judgment for Plaintiff is improper on Plaintiff's retaliation claim.

### D. Count V—Constructive Discharge

 In order for Plaintiff to prove constructive discharge, Plaintiff must demonstrate that "she involuntarily resigned from her employer to escape intolerable and illegal employment requirements to which he or she was subjected to because of race, color, religion, sex, or national origin." *See Morgan v. Ford,* 6 F.3d 750 (11th Cir.1993) (quoting *Henson v. City of Dundee,* 682 F.2d 897, 907 (11th Cir.1982)). Thus, Plaintiff must show that her working conditions were so intolerable that a reasonable person in the same position would be compelled to resign. *See Kilgore v. Thompson & Brock Mgmt.,* 93 F.3d 752, 754 (11th Cir.1996).

Further, an employee has the responsibility to act reasonably before choosing to resign, and then labeling that resig-

nation as a constructive discharge. *See Garner v. Wal–Mart Stores, Inc.,* 807 F.2d 1536, 1539 (11th Cir.1987). Reasonable conduct involves notifying the employer of improper behavior, and affording the employer an opportunity to correct the situation. *See id.*

 Plaintiff claims that she was constructively discharged from her position with the City due to a hostile work environment. (Dkt.16). Where a plaintiff is unable to prove a hostile work environment claim, she is also unable to support a claim of constructive discharge based on this alleged hostile work environment. *See* Ernest C. Hadley & George M. Chuzi, Sexual Harassment: Federal Law Ch. 3 I.A. 8 (1997 ed.) (citing *Ebert v. Lamar Truck Plaza,* 715 F.Supp. 1496, 1500 (D.Colo.1987)).

This Court found that summary judgment was improper for Plaintiff's hostile work environment claim, therefore, summary judgment is also improper on Plaintiff's constructive discharge claim.

### II. Defendants' Motion for Summary Judgment

Defendants argue that they are entitled to summary judgment as a matter of law as to Count I, Count II, Count III, and Count IV of Plaintiff's Second Amended Complaint. Defendants also request that this Court grant summary judgment in their favor on Count I, Section 1983, if summary judgment is found in favor of Defendant on Plaintiff's Title VII claims, because the two claims are governed under the same legal standards. (Dkt.20).

### A. Count II—Race Discrimination

 Defendants assert that Plaintiff has not offered any evidence to prove that

Plaintiff was subjected to adverse employment action, to which similarly situated employees were not subjected. (Dkt.20). Specifically, Defendants argue that the only evidence submitted by Plaintiff to support racial motivation in the transfer of Officer Paz to the day-shift was that: (1) Officer Paz is white; (2) Plaintiff is black; and (3) Plaintiff did not think that she was given a good reason for not being assigned to the day-shift position. (Dkt.20). Further, Defendants correctly point out that Plaintiff's own testimony stated a legitimate reason offered by Defendants for Officer Paz's selection over Plaintiff, which was that "he was an excellent officer." (Dkt.20). Moreover, Officer Paz participated in activities bringing the City positive media attention. (Dkt. 20, Mason's Depo. 58:3).

Plaintiff responds that she was also "an excellent officer," as documented in her 1997–98, Police Performance Evaluation completed by Cpl. Northrop. Further, Plaintiff asserts that she and Officer Paz had been employed with the City of Tampa Police Department for approximately the same length of time. (Dkt.20). Plaintiff alleges that she was actually hired four (4) months prior to Officer Paz's hiring. (Dkt.20). Moreover, Plaintiff responds that when she joined Squad 66 as the only black female, she was not afforded the same treatment by her supervisor, Sgt. Pricher, as other squad members received. (Dkt.27). Specifically, Plaintiff offers evidence that Plaintiff was not supervised in the field, nor did Sgt. Pricher acquaint himself with her or discuss career goals with her as he did with other squad members. (Dkt.27).

Additionally, Plaintiff offers evidence that she was subjected to heightened scrutiny upon her transfer to Squad 66.

(Dkt.20). Plaintiff cites testimony by Moore and Sgt. Pricher stating that squad members were ordered by Sgt. Pricher to provide information in reference to any calls the squad members had been on with Plaintiff, as well as observations of Plaintiff's activities. (Dkt.20). However, Sgt. Pricher denies "soliciting" the information, but rather states that the officers, "came to me on their own." (Pricher Depos. at 23).

Accordingly, this Court finds that Plaintiff has created a genuine issue for trial regarding the issue of whether Defendants treated similarly situated employees more favorably than Plaintiff. Thus, Defendants are not entitled to summary judgment as a matter of law on Plaintiff's claim of racial discrimination.

**B. Count III—Retaliation**

Defendants claim that Plaintiff cannot establish a *prima facie* case of retaliation because Plaintiff fails to show a causal link between any complaint of race discrimination, and adverse action allegedly taken by Defendants. (Dkt.20). Defendants assert that Plaintiff cannot show that any supervisors were even aware of a race discrimination complaint made by Plaintiff, or Plaintiff's husband. (Dkt.20). Defendant states that the first time Plaintiff made a racial complaint to the City was on October 19, 1998, with the Tampa Office of Human Rights. (Dkt.20).

Plaintiff responds that a reasonable factfinder could determine, from the evidence submitted, that information regarding Plaintiff's complaint to the Tampa Human Rights Office, and Plaintiff's husband's complaint to the Mayor's office, "filtered down to the department." (Dkt.20). Plaintiff offered evidence of Lt. Miller's

testimony that there was a rumor that Plaintiff had filed a discrimination complaint with the Tampa Human Rights Office. Further, Plaintiff asserts that Dr. Skotko's awareness of Mr. Mason's complaint to the Mayor's office raises a question regarding whether the Defendants did, in fact, have knowledge that a racial complaint had been made by Plaintiff or Mr. Mason. (Dkt.27). While the other evidence cited by Plaintiff is insufficient, Mr. Mason's sworn testimony states that he told Assistant Mayor Lane that his wife "was being treated unfairly and there was a possibility it could be motivated by race." (T. Mason Depo. at 46:10).

Accordingly, Plaintiff has created a genuine issue of fact regarding whether Defendants knew that any complaints of race discrimination had been reported by Plaintiff or her husband. Thus, Defendants are not entitled to summary judgment as a matter of law on Plaintiff's retaliation claim.

### C. Count IV—Hostile Work Environment

While *Meritor* specifically recognizes a hostile work environment cause of action for sexual harassment, the Court implicitly approved claims for a hostile work environment based on racial harassment. *See Daniels v. Essex Group, Inc.,* 937 F.2d 1264, 1270 (7th Cir.1991). Defendants offer evidence of Plaintiff's own testimony which states that Plaintiff never heard any supervisors, including Sgt. Pricher, use any racial epithets. (Dkt. 20, Mason Depo. at 201).

Plaintiff's response fails to allege any specific instances of severe and pervasive conduct by Defendants to prove the existence of a hostile work environment.

Moreover, review of the record reveals the absence of sufficient evidence that rises to the level of severe and pervasive conduct. Thus, this Court finds that Plaintiff has not shown that a genuine issue of material fact exists regarding whether Defendants' workplace atmosphere constituted a hostile work environment. Accordingly, Defendants are entitled to summary judgment as a matter of law on Plaintiff's hostile work environment claim.

Consequently, because this Court finds that Defendants are entitled to summary judgment on Plaintiff's hostile work environment claim, Defendants are appropriately entitled to summary judgment on Plaintiff's constructive discharge claim. As this court noted previously, if a plaintiff fails to prove a *prima facie* case of hostile work environment, a constructive discharge claim will be defeated as well.

### D. Count I—Section 1983

Plaintiff has alleged a violation of her rights under the Equal Protection Clause of the United States Constitution, pursuant to 42 U.S.C. § 1983, based upon Defendants' alleged unlawful employment practices. (Dkt.16). In order to establish a violation of the Equal Protection Clause, Plaintiff must prove discriminatory motive or purpose. *See Cross v. Alabama,* 49 F.3d 1490, 1507–08 (11th Cir.1995). Further, when Section 1983 is used as a parallel remedy for violation of Section 702 of Title VII, 42 U.S.C. § 2000e–2, the elements of the two causes of action are the same. *See id.* (citing *Hardin v. Stynchcomb,* 691 F.2d 1364, 1369 n. 16 (11th Cir.1982)).

Based on this Court's finding that Plaintiff presented sufficient evidence to create a genuine issue of material fact regarding

whether Defendants treated similarly situated white employees more favorably, this Court finds that Defendants are not entitled to summary judgment as a matter of law on Plaintiff's Section 1983 claim. Accordingly, it is

**ORDERED** that Plaintiff's Dispositive Motion for Summary Judgment, (Dkt.19), be **DENIED;** and Defendants' Motion for Summary Judgment, (Dkt.20), be **GRANT-ED** in part, and **DENIED** in part, in that Counts III and V be dismissed from this action.