**Peggy S. PUCKETT, Plaintiff,**

v.

**John E. POTTER, Defendant.**

**Civil Action No. 2:03cv465–T.**

United States District Court,
M.D. Alabama,
Northern Division.

Sept. 8, 2004.

Jimmy Douglas Jacobs, Montgomery, AL, for Plaintiff.

Martha Ann Miller, R. Randolph Neeley, U.S. Attorney's Office, Montgomery, AL, for Defendant.

**OPINION**

MYRON H. THOMPSON, District Judge.

Plaintiff Peggy S. Puckett brings this lawsuit against defendant John E. Potter in his capacity as the Postmaster General

of the United States Postal Service (USPS), alleging illegal discrimination, harassment, and retaliation in violation of the Rehabilitation Act of 1973, 29 U.S.C.A. §§ 701–796*l*, and seeking review of an Equal Employment Opportunity Commission (EEOC) compliance decision. The jurisdiction of this court has been properly invoked pursuant to 29 U.S.C.A. § 794a, and 42 U.S.C.A. § 2000e–5(f). Before the court are Potter's motion to dismiss and motion for summary judgment. The court will grant both motions.

## I. BACKGROUND

Puckett is currently employed by the USPS as a bulk-mail clerk in the Bulk Mail Acceptance Unit at the Montgomery, Alabama Processing and Distribution Center. She has severe sensorineural hearing loss that began when she was in her twenties. She started wearing a hearing aid in her late thirties or early forties, and her doctor has told her that she will probably eventually become completely deaf.

Two series of events are relevant to Puckett's complaint. The first series began in 1991, the second in 1999.

### A. 1991 Events

*April 1993 USPS Decision:* Puckett started work in the Bulk Mail Acceptance Unit in August 1990; her shift was from 2:30 to 11:00 p.m. On several occasions in early 1991, she informed her supervisors that, because of her hearing loss, she was having trouble using the telephone in her work area. She requested that her supervisors provide her with an acoustical booth to allow her to use the telephone. She was told by at least one supervisor that he would look into finding a solution to her problem, but nothing was ever done for her.

In February 1991, Puckett's immediate supervisor informed her that, in May 1991, he was changing her position's hours from 2:30 to 11:00 p.m., to 4:30 p.m. to 1:00 a.m., and was re-posting the position. After Puckett's position was re-posted, another employee with more seniority bid on the position and received it. Starting on June 15, 1991, Puckett worked for two weeks as a distribution clerk working from 1:30 to 11:00 p.m.; then, starting on June 29, 1991, she returned to a bulk-mail-clerk position with hours from 4:30 p.m. to 1:00 a.m. On October 15, 1991, she successfully bid on a bulk-mail-clerk position with hours from 1:30 to 11:00 p.m.

Puckett filed a formal administrative complaint of disability discrimination on June 6, 1991. On January 29, 1993, the EEOC found that the USPS discriminated against Puckett by re-posting her job and by failing to accommodate her hearing loss.[1] The EEOC recommended that the USPS (1) place Puckett in her original position, (2) provide her with the equipment necessary to perform her job duties, and (3) award her all available backpay. On April 20, 1993, the USPS adopted as its final-agency decision the EEOC's findings and recommended relief.[2]

*August 1994 EEOC Decision:* In July 1994, Puckett appealed—pursuant to 29 C.F.R. § 1614.504(b)—to the EEOC for a determination whether the USPS was in compliance with its April 1993 final decision.[3] She claimed that the USPS had not

---

1. Plaintiff's Response, etc., filed June 23, 2004 (Pl.'s Resp.), Ex. 3, *Puckett v. United States Postal Service*, EEOC Case No. 130–92–8143–X, at 16 (EEOC January 29, 1993).

2. Defendant's Motion to Dismiss, etc., filed May 7, 2004 (Def.'s Motion), Ex. 5, Letter from Larry D. Stebbins to Peggy Puckett of April 20, 1993, at 2.

3. Pl.'s Resp., Ex. 5, Request for Relief, July 25, 1994.

complied with its final-agency decision because it had not provided her with an acoustical booth and because it had not properly calculated the backpay she was due.

It appears from the record that the dispute about backpay was as follows.[4] The USPS agreed that Puckett was entitled to 'out-of-schedule' pay for the period from June 15 to October 5, 1991, to compensate her for working hours different from those in her original position. Puckett, however, argued that she was also entitled to hourly compensation for the difference between her original work hours, 2:30–11:00 p.m., and the work hours in the positions she held between June 15 and October 5. Thus, she claimed that she was entitled to four hours of compensation per day for the period from June 29 until October 5, 1991, when she was working 4:30 p.m. to 1:00 a.m.: two hours of compensation for the difference between 2:30 and 4:30 p.m. and two hours of compensation for the difference between 11:00 p.m. and 1:00 a.m. She further claimed that, for the period from 2:30 to 4:30 p.m., she should be compensated at 'straight time,' but, for the period from 11:00 p.m. to 1:00 a.m., she should be paid at the overtime rate, or 'time-and-a-half.'

On August 8, 1994, the EEOC issued a decision remanding the case to the USPS for a determination whether it complied with the April 1993 final decision.[5] The EEOC found that the USPS had neither issued a determination as to its compliance with its own final-agency decision nor supplied the EEOC with evidence from which it could make a compliance determination.

*May 1996 EEOC Decision:* In May 1995, Puckett petitioned the EEOC—pursuant to 29 C.F.R. § 1614.503(a)—to enforce its August 1994 decision. On May 24, 1996, the EEOC found that the USPS had not responded to its order to make a determination whether it was in compliance with its own April 1993 final decision.[6] The EEOC ordered the USPS to issue a new final-agency decision, specifying each element of relief to which Puckett was entitled, its calculation of Puckett's backpay, and the corrective action it had taken to accommodate Puckett's disability.[7]

*June 1996 USPS Decision:* The USPS issued its second final decision on June 4, 1996, concluding that it had properly calculated Puckett's backpay and that, by providing her with an amplifying device for her telephone, it had complied with is obligation to accommodate her disability.[8] Puckett appealed the USPS's final decision pursuant to 29 C.F.R. § 1614.401(a).

*September 1998 EEOC Decision:* On September 24, 1998, the EEOC reversed the USPS's decision that it had fully implemented its April 1993 decision.[9] The EEOC found that Puckett's request for an acoustical booth was reasonable and ordered the USPS to provide Puckett with one. The EEOC also ordered the USPS to pay Puckett the any 'out-of-schedule' pay she was still owed.

---

4. This summary of the backpay dispute is taken largely from Pl.'s Resp., Ex. 12, *Puckett v. United States Postal Service,* Appeal No. 01965253, at 4 (EEOC Sept. 24, 1998).

5. Pl.'s Resp., Ex. 6, *Puckett v. United States Postal Service,* Appeal No. 01943477 (EEOC Aug. 8, 1994).

6. *Id.,* Ex. 9, *Puckett v. United States Postal Service,* Petition No. 04950021 (EEOC May, 24, 1996).

7. *Id.* at 7.

8. *Id.,* Ex. 10, Letter from Otis Maclin, Jr. to Peggy Puckett of June 4, 1996.

9. *Id.,* Ex. 12, *Puckett v. United States Postal Service,* Appeal No. 01965253 (EEOC Sept. 24, 1998).

On the backpay question, however, the EEOC disagreed with Puckett's calculation of the amount she was owed for the period between June 15 and October 5, 1991. The EEOC held that, under Puckett's calculation, she would effectively receive pay for more hours than she would actually have worked during that period. The EEOC concluded that "[t]his . . . would provide [Puckett] with more compensation than she would have received had the discrimination not occurred and she had remained in her original position at her original shift." [10]

*March 2000 EEOC Decision:* On December 14, 1998, pursuant to 29 C.F.R. § 1614.503(a), Puckett petitioned the EEOC for enforcement of its September 1998 decision.[11] Puckett maintained that the USPS had still not paid her the proper amount of 'out-of-schedule' pay; her argument was that some of the 'out-of-schedule' pay she was owed should have been calculated at the overtime rate.

The EEOC issued a decision on Puckett's December 1998 enforcement petition on March 29, 2000.[12] The EEOC found that the USPS had not provided evidence as to whether it had complied with the EEOC's September 1998 decision. The EEOC went on to find that Puckett was entitled to approximately $1,300 in 'out-of-schedule' pay and ordered the USPS to pay that amount. However, the EEOC specifically reiterated that Puckett was not entitled to any backpay calculated at the overtime rate.[13]

*April 2003 EEOC Decision:* Subsequent to the EEOC's March 2000 decision, the USPS submitted a report in support of its claim that it was in full compliance with the EEOC's September 1998 decision. In response, in a letter dated February 22, 2001, Puckett again took the position that she was owed some measure of backpay calculated at the overtime rate.[14] On April 7, 2003, the EEOC, by letter, informed Puckett that it had determined that the USPS had complied with its September 1998 decision.[15]

**B. 1999 Incidents[16]**

In late 1998, Betty Mendez was assigned as Puckett's supervisor. In April 1999, Mendez changed Puckett's hours of work from 1:30 to 10:00 p.m., to 2:30 to 11:00 p.m. Puckett filed an EEOC complaint about the change in hours on May 17, 1999, and proceeded to mediation. The mediation ended in an impasse, however. Puckett subsequently assumed a new position in August 1999, with different hours.

At some point after Mendez changed Puckett's hours, Mendez verbally reprimanded Puckett for requesting 'out-of-schedule' pay. At another point, Mendez reprimanded Puckett for working overtime hours that had been approved by another of Puckett's supervisors.

On July 23, 1999, Puckett filed an equal-employment-opportunity (EEO) complaint.

10. *Id.* at 5.

11. *Id.*, Ex. 13, Petition for Enforcement, December 14, 1998.

12. *Id.*, Ex. 21, *Puckett v. United States Postal Service*, Pet. No. 04990029 (EEOC Mar. 29, 2000).

13. *Id.* at 3.

14. *Id.*, Ex. 25, Letter from Peggy S. Puckett to Natalie Rochelle of February 22, 2001.

15. *Id.*, Ex. 27, Letter from Natalie Rochelle to Peggy S. Puckett of April 7, 2003.

16. Puckett's brief, affidavit, and deposition include a number of other incidents of alleged discriminatory or retaliatory treatment. However, because the parties substantially narrowed the issues in this case at the pretrial conference and because these other incidents are not relevant to the court's disposition of this matter, the court does not recount them.

In the section of the form that asks for the type of discrimination alleged, she checked the boxes for "retaliation" and "disability." [17] In the section of the form in which the complainant is asked to describe the "specific actions or situation that resulted in your allegation(s)," Puckett wrote:

"Allegation # 1—On 4–14–99, my bid hours were changed from 1330–2200 hours to 1430–2300 hours.

Allegation # 2—On 3–24–99 and 4–23–99, I was castigated by my supervisor Betty Mendez." [18]

In a decision issued without a hearing, an administrative law judge (ALJ) of the EEOC denied Puckett's claim that the USPS discriminated or retaliated against her when Mendez changed her hours.[19] The USPS implemented the decision of the ALJ,[20] and Puckett appealed. The EEOC denied Puckett's appeal, and, on January 27, 2003, the EEOC denied Puckett's motion for reconsideration.[21]

## II. LEGAL STANDARDS

In considering Potter's motion to dismiss, the court accepts her allegations as true, Fed.R.Civ.P. 12(b); *Andreu v. Sapp,* 919 F.2d 637, 639 (11th Cir.1990), and construes the complaint liberally in her favor. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The lawsuit may not be dismissed unless Puckett can prove no set of facts supporting the relief requested. *Id.* at 236, 94 S.Ct. at 1686; *Duke v. Cleland,* 5 F.3d 1399, 1402 (11th Cir.1993).

Potter's motion for summary judgment is due to be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that [Potter] is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Under Rule 56, Potter must first inform the court of the basis for the motion, and the burden then shifts to Puckett to demonstrate why summary judgment would not be proper. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *see also Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115–17 (11th Cir.1993) (discussing burden-shifting under Rule 56). Puckett must affirmatively set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials in her pleadings. Fed.R.Civ.P. 56(e).

The court's role at the summary-judgment stage is not to weigh the evidence or to determine the truth of the matter, but rather to determine only whether a genuine issue exists for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). In doing so, the court must view the evidence in the light most favorable to Puckett and draw all reasonable inferences in her favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

## III. DISCUSSION

Puckett brings three claims.[22] First,

---

**17.** Pl.'s Resp., Ex. 29, EEO Complaint of Discrimination in the Postal Service (EEO Complaint).

**18.** *Id.*

**19.** *Id.,* Ex. 36, *Puckett v. Henderson,* EEOC No. 130A08110X (EEOC July 12, 2000) (ALJ Decision).

**20.** *Id.,* Ex. 37, Letter to Peggy S. Puckett from Karen Borowski of Aug. 1, 2000.

**21.** *Id.,* Ex. 41, *Puckett v. Potter,* Req. No. 05A30208 (EEOC Jan. 29, 2003).

**22.** Puckett's complaint and her response brief left some question as to the exact nature of her claims. At the pretrial conference, however, plaintiff's counsel clarified her claims

she claims that the EEOC erred when it decided, in April 2003, that the USPS had fully complied with the EEOC's September 1998 decision requiring the USPS to provide her with the appropriate backpay. Second, she claims that, on two occasions in 1999, she was harassed because of her disability and because of her prior EEO administrative complaints. Third, she claims that Mendez, her supervisor, discriminated against her based on her disability and retaliated against her based on her prior EEO administrative-complaint activity in April 1999, by changing her hours. Puckett seeks compensatory and punitive damages along with injunctive relief.

In response, Potter (1) moves to dismiss Puckett's challenge to the EEOC's April 2003 compliance determination; (2) moves to dismiss Puckett's harassment claim; (3) moves for summary judgment on her discrimination claim; and (4) moves for summary judgment on her retaliation claim. The court will treat these arguments in turn.

### A. Dismissal of Challenge to the EEOC's April 2003 Decision

Potter moves to dismiss Puckett's challenge to the EEOC's April 2003 decision on the ground that Puckett failed to comply with the required administrative procedures. Potter's motion is due to be granted.

A brief overview of the administrative process applicable to federal employees will be helpful. Federal employees complaining of discrimination in their employment are first required to contact a counselor at their agency's EEO office within 45 days of the alleged discriminatory act or condition. 29 C.F.R. § 1614.105(a)(1). Once the employee contacts her EEO counselor, she must undergo a counseling period, and, if the dispute cannot be re-

solved, the counselor must inform the employee within 30 days after the initial contact of her right to file a formal complaint with the agency. 29 C.F.R. § 1614.105(d). Once she has received such notice, the employee has 15 days to follow through with her formal complaint. 29 C.F.R. § 1614.106(b). In this case, Puckett timely filed her administrative complaint in June 1991.

If the employee requests a hearing, the EEOC will appoint an ALJ to conduct the hearing, and, in most cases, the ALJ will issue a decision and order relief, when appropriate, within 180 days. 29 C.F.R. § 1614.109(a) & (i). The agency then takes final action on the complaint by issuing a final order within 40 days of receipt the ALJ's decision. 29 C.F.R. § 1614.110(a). "The final order shall notify the complainant whether or not the agency will fully implement the decision of the administrative judge and shall contain notice of the complainant's right to appeal to the [EEOC], the right to file a civil action in federal district court, the name of the proper defendant in any such lawsuit and the applicable time limits for appeals and lawsuits." *Id.* The USPS has issued two final-agency decisions in this case, one in April 1993 and one in June 1996.

If the complainant does not appeal the agency's final action or bring a civil action, the final action is binding on the agency. 29 C.F.R. § 1614.504(a). If the complainant believes that the agency is subsequently not in compliance with its own final decision, the complainant must first notify the agency's EEO director. *Id.* The agency is then to investigate and resolve the matter; if the agency fails to respond to the complainant or if the complainant is unsatisfied with the agency's response, she "may appeal to the [EEOC] for a determination as to whether the agency has com-

---

and narrowed them substantially. *See* Pre- trial Order, filed August 12, 2004, at 22–23.

plied with the terms of the ... decision." 29 C.F.R. § 1614.504(b); *see also* 29 C.F.R. § 1614.401(e). Puckett used this procedure in July 1994 to argue that the USPS had not complied with its April 1993 final decision.

The complainant may also directly appeal an agency's final action to the EEOC. 29 C.F.R. § 1614.401(a). Such an appeal must be filed within 30 days of the complainant's receipt of the agency's final action. 29 C.F.R. § 1614.402(a). On behalf of the EEOC, the Office of Federal Operations (OFO) will review the appeal and issue a decision. 29 C.F.R. § 1614.405(a). Except when the agency requests reconsideration of an EEOC decision, "[r]elief ordered in a final EEOC decision is mandatory and binding on the agency." 29 C.F.R. § 1614.502(a). Puckett used this procedure to appeal the USPS's June 1996 final decision.

Once a complainant has gone to the EEOC, either to enforce an agency's final action or to appeal an agency's final action, and received a decision, the complainant may subsequently petition the EEOC to enforce its decision if the complainant believes the agency is not complying with the EEOC's decision. 29 C.F.R. § 1614.503(a). Puckett used this procedure in December 1998, when she petitioned the EEOC to enforce its September 1998 decision. Indeed, the EEOC's April 2003 decision was in response to Puckett's December 1998 enforcement petition.

When a complainant petitions the EEOC to enforce its decision, the OFO, on behalf of the EEOC, "shall take all necessary action to ascertain whether the agency is implementing the decision of [EEOC]" and, "[i]f the agency is found not to be in compliance with the decision, efforts shall be undertaken to obtain compliance." 29 C.F.R. § 1614.503(b). "Where the [EEOC] has determined that an agency is not complying with a prior decision, or

where an agency has failed or refused to submit any required report of compliance, the [EEOC] shall notify the complainant of the right [(1)] to file a civil action for enforcement of the decision pursuant to ... the Rehabilitation Act and to seek judicial review of the agency's refusal to implement the ordered relief pursuant to the Administrative Procedure Act, 5 U.S.C. 701 *et seq.*, and the mandamus statute, 28 U.S.C. 1361, or [(2)] to commence de novo proceedings pursuant to the appropriate statutes." 29 C.F.R. § 1614.503(g).

A complainant who has brought a formal complaint is also "authorized under ... the Rehabilitation Act to file a civil action in an appropriate United States District Court." 29 C.F.R. § 1614.407. Such a civil action can be filed after an agency final decision or after an EEOC appeal. If the complainant does not file an appeal to the EEOC, the complainant must file her civil action within 90 days of the agency's final action or within 180 days of filing her complaint, whichever is earlier; if an appeal is taken, the complainant must file her civil action within 90 days of the EEOC's decision or within 180 days of filing her appeal, whichever is earlier. *Id.*

■ A federal employee's failure to follow these administrative procedures and to adhere to the stated deadlines is a ground for dismissal of her action. *Doe v. Garrett,* 903 F.2d 1455, 1461 (11th Cir.1990); *Manning v. Carlin,* 786 F.2d 1108, 1109 (11th Cir.1986).

■ To determine whether Puckett properly followed the above procedures, the first task is to determine what it is that she is arguing. That is no easy task. Her complaint does not include anything about challenging any EEOC decision. However, relying on her counsel's representations at the pretrial conference, the court concludes that Puckett is challenging

the EEOC's April 2003 decision that the USPS had finally complied with the EEOC's September 1998 decision requiring the USPS to provide her with full 'out-of-schedule' pay. Based on Puckett's February 2001 letter to the EEOC disputing the USPS's conclusion that it had fully compensated her and based on Puckett's deposition testimony, the court concludes that the basis of Puckett's challenge is that the USPS did not include in her award any backpay calculated at the overtime rate.[23]

Puckett's claim is due to be dismissed as untimely. As an initial matter, though, it is not entirely clear that Puckett is entitled to any judicial review of the EEOC's April 2003 decision. The EEOC's April 2003 decision resolved Puckett's December 1998 petition to enforce the EEOC's September 1998 decision under 29 C.F.R. § 1614.503. In essence, then, the administrative proceedings from December 1998 until April 2003 were concerned with the question of whether the USPS had complied with the EEOC's September 1998 order. However, the regulations governing such compliance actions do not provide for judicial review of such EEOC final determination. As stated, 29 C.F.R. § 1614.503(g) provides that, if the EEOC finds that the agency is not in compliance, the plaintiff can bring a civil action to compel the agency's compliance or bring a *de novo* civil action, but § 1614.503(g) does not provide for judicial review of the EEOC's compliance decision itself. Further, the regulations contain no provision governing the applicable time limit for filing such a judicial review. Section 1614.407 of Title 29 governs the time within which complainants can file a "civil action," but there is no indication that § 1614.407 includes appeals within the

meaning of the term "civil action." Finally, Subpart D of Part 1614 of Title 29 of the C.F.R., which governs appeals from agency-employment decisions to the EEOC generally, contains not a single provision on judicial review of EEOC decisions. For these reasons, it is open to serious question whether the action contemplated by Puckett—judicial review of the EEOC's compliance decision—is permitted by statute or regulation.

Notwithstanding, to the extent that Puckett's action is permitted, it is not timely. As stated, there are no rules clearly applicable to this situation, but the general rule is that a complainant must file her civil action within 90 days of the EEOC's decision or within 180 days of filing her appeal with the EEOC, whichever is earlier. 29 C.F.R. § 1614.407(c)-(d). It is true that Puckett filed this lawsuit within 90 days of the EEOC's April 2003 decision. However, that decision is not the one that Puckett wants to challenge. She does not want to challenge whether the USPS complied with the September 1998 EEOC decision because, in that decision, the EEOC concluded that she was not entitled to any overtime pay. Rather, she wants to argue that the 1998 EEOC decision was incorrect and that she is, in fact, entitled to backpay calculated at the overtime rate. However, the time to bring a challenge to the EEOC's September 1998 decision was within 90 days of that decision. Because she is only now filing her complaint, it is untimely.

Put another way, from December 1998 until April 2003, Puckett followed the procedures to enforce the EEOC's September 1998 decision. It appears, though, that

---

**23.** *Id.*, Ex. 25, Letter from Peggy S. Puckett to Natalie Rochelle of February 22, 2001; Def.'s Motion, Ex. 16, Pucket Depo. 12–13. The court need not address at this stage the merits of Puckett's argument; indeed, the court would be ill-positioned to do so because Puckett's argument with respect to the backpay that she believes she is owed has never been completely clear.

her argument all along was not that the USPS had failed to comply with the terms of that EEOC decision, but that the EEOC's decision regarding overtime was incorrect. If Puckett wanted to challenge the September 1998 decision of the EEOC—to the extent she is able to do so in this court—she should have done so within 90 days of that decision, not now after five years of compliance proceedings. For the above reasons, the court will grant Potter's motion to dismiss this claim.

**B. Dismissal of Harassment Claim**

■ Potter moves to dismiss Puckett's claim that she was twice harassed on the ground that the USPS dismissed Puckett's harassment claim in 1999 and Puckett did not timely appeal that decision or file a civil action. As stated, a failure to pursue administrative remedies and to adhere to the administrative procedure is a ground for dismissal. *Doe*, 903 F.2d at 1461; *Manning*, 786 F.2d at 1109. Potter's motion to dismiss this claim is due to be granted.

Puckett timely filed her formal EEO complaint with the USPS on July 23, 1999, and she properly presented her harassment claim in her EEO complaint. Puckett checked the boxes for "Retaliation" and "Disability"; alleged that "on 3–24–99 and 4–23–99, [she] was castigated by [her] supervisor Betty Mendez"; and requested "[c]essation of castigation and harassment." [24] Puckett's July 1999 complaint also presented her claim for discrimination and retaliation based on the change in her work hours.

In a letter dated August 20, 1999, the USPS dismissed Puckett's harassment claim pursuant to 29 C.F.R. § 1614.107(a)(1), which provides that an agency may dismiss a claim without investigation.[25] The USPS's stated ground for dismissal was that, because Puckett was not aggrieved by the two alleged incidents of harassment, she had not stated a claim. The USPS's letter stated that it was a final decision with respect to the harassment issue and that Puckett had a right to file a civil action in federal court or an appeal to the EEOC. In the same letter, the USPS informed Puckett that it had accepted for investigation her claim that she was discriminated against and retaliated against when her hours were changed.

After the USPS dismissed Puckett's harassment claim, an EEOC ALJ found that the available evidence did not support her charges of discrimination or retaliation.[26] The USPS accepted this determination as its final-agency decision on August 1, 2000.[27] Puckett filed her notice of appeal on August 29, 2000, and the EEOC affirmed the ALJ's decision on September 9, 2002. On October 8, 2002, Puckett filed a request for reconsideration of the EEOC's decision on appeal, which request was denied on January 27, 2003. Puckett filed this lawsuit on April 30, 2003. At no time during any of her EEOC hearings did Puckett again raise her harassment claim.

The effect of an agency's dismissal pursuant to 29 C.F.R. § 1614.107(a) depends on whether the agency dismisses all of a complainant's claims or only some of them. "When an agency dismisses an *entire complaint* under § 1614.107," that dismissal constitutes a final-agency decision. 29 C.F.R. § 1614.110(b) (emphasis added); *Johnston v. O'Neill*, 272 F.Supp.2d 696, 701 (N.D.Ohio 2003). Failure by a plaintiff

---

24. EEO Complaint.

25. Def.'s Motion, Ex. 16, Puckett Depo., Ex. 9, Letter from Otis Maclin, Jr. to Peggy S. Puckett of August 20, 1999.

26. ALJ Decision.

27. Pl.'s Resp., Ex. 37, Letter from Karen A. Borowski to Peggy S. Puckett of August 1, 2000.

to bring her civil action within 90 days of such a dismissal is a ground for dismissal of the plaintiff's judicial action. *See, e.g., Johnston,* 272 F.Supp.2d at 702. However, "[w]here the agency believes that *some but not all of the claims* in a complaint should be dismissed for the reasons contained in [§ 1614.107(a) ]," the agency's dismissal is not a final decision. 29 C.F.R. § 1614.107(b) (emphasis added). Rather, the agency's decision "is reviewable by an administrative judge if a hearing is requested on the remainder of the complaint, but is not appealable until final action is taken on the remainder of the complaint." *Id.* Section 1614.107(b) thus contemplates that the agency's decision to dismiss is not considered final until the agency takes final action on the remainder of the administrative complaint that was not dismissed.

Under this rule, Puckett did not timely file her harassment claim in this court. The USPS's decision to dismiss Puckett's harassment claim became final on August 1, 2000, when it accepted the ALJ's decision on Puckett's discrimination and retaliation claim. Puckett then had 30 days to appeal the USPS's dismissal, 29 C.F.R. § 1614.402(a), or 90 days to file a civil action, 29 C.F.R. § 1614.407(a). The EEOC's decision reflects that the only issues presented on appeal were Puckett's discrimination and retaliation claims,[28] and Puckett did not raise her harassment claim in her request for reconsideration of the EEOC's appellate decision.[29] Thus, she had 90 days from the USPS's August 1, 2000, final decision to file a lawsuit asserting her harassment claim. This she did

not do. Accordingly, her harassment claim is untimely and must be dismissed.

## C. Summary Judgment on Discrimination Claim

Potter moves for summary judgment on Puckett's claim that she was discriminated against by the USPS when, in April 2003, her supervisor Mendez changed her work hours. It is undisputed that in April 1999, Mendez changed Puckett's shift by one hour, from 1:30 to 10:00 p.m., to 2:30 to 11:00 p.m. Potter argues that Puckett fails to make out a prima facie case of discrimination because this change in her working hours does not amount to an adverse-employment action. The court agrees and will grant Potter's motion.[30]

The Rehabilitation Act of 1973 "prohibits federal agencies from discriminating in employment against otherwise qualified individuals with a disability." *Mullins v. Crowell,* 228 F.3d 1305, 1313 (11th Cir. 2000). The Act specifically provides that:

"No otherwise qualified individual with a disability in the United States … shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under … under any program or activity conducted by any Executive agency or by the United States Postal Service."

29 U.S.C.A. § 794(a). In addressing claims of disability discrimination, the court applies the well-known burden shifting analysis laid out in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *St. Mary's Honor Center v. Hicks,* 509

---

**28.** Def.'s Motion, Ex. 16, Puckett Depo., Ex. 12, *Puckett v. Potter,* Appeal No. 01A05843 (EEOC Sept. 9, 2002).

**29.** Pl.'s Resp., Ex. 39.

**30.** Potter also argued that summary judgment is appropriate because (1) Puckett is not dis-

abled for purposes of the Rehabilitation Act and (2) the decision to change Puckett's hours was motivated by a legitimate non-discriminatory reason. Because the court finds the "adverse employment action" issue determinative, it does not reach these two arguments.

U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). *Wascura v. South Miami,* 257 F.3d 1238, 1242 (11th Cir.2001); *Hilburn v. Murata Elec. North America, Inc.,* 181 F.3d 1220, 1226 (11th Cir. 1999).

■ To be sure, both *Wascura* and *Hilburn* are cases brought under the Americans with Disabilities Act (ADA), 42 U.S.C.A. §§ 12112–12117 (discrimination) and 42 U.S.C.A. § 12203 (retaliation). However, "[d]iscrimination claims under the Rehabilitation Act are governed by the same standards used in ADA cases." *Cash v. Smith,* 231 F.3d 1301, 1305 (11th Cir.2000). Accordingly, "[c]ases decided under the Rehabilitation Act are precedent for cases under the ADA, and vice-versa." *Id.* at 1305 n. 2.

"In order to establish a prima facie case of discrimination under the [Rehabilitation Act], [Puckett] must demonstrate that she (1) is disabled, (2) is a qualified individual, and (3) was subjected to unlawful discrimination because of her disability." *Cash v. Smith,* 231 F.3d 1301, 1305 (11th Cir.2000). Demonstrating a prima facie case is not onerous; it requires only that Puckett establish facts adequate to permit an inference of discrimination. *Holifield v. Reno,* 115 F.3d 1555, 1561–1562 (11th Cir.1997) (citations omitted) (Title VII case).

■ To satisfy the third element of the prima facie case, Puckett must show that she suffered an adverse-employment action. *Doe v. Dekalb County School District,* 145 F.3d 1441, 1445 (11th Cir.1998) (ADA case). To meet this requirement, Puckett "must show a serious and material change in the terms, conditions, or privileges of employment," *Davis v. Town of Lake Park, Florida,* 245 F.3d 1232, 1239 (11th Cir.2001), such that "a reasonable person in [her] position would view the

employment action in question as adverse," *Doe,* 145 F.3d at 1449. In general, the factors that can make an employment action adverse include a loss or reduction in pay, responsibility, prestige, or opportunities for professional growth or advancement. *Doe,* 145 F.3d at 1452.

■ Taking the facts as stated by Puckett, the court cannot find that her change in hours was an adverse-employment action. First, she admitted in her deposition that the one-hour change in her working hours did not result in a loss of pay for her.[31] Puckett points out that she is owed out-of-schedule pay as a result of the change in hours, but that is an increase in pay, not a loss of pay. Second, Puckett does not allege that the one-hour change in her shift was accompanied by any loss of prestige, responsibility, or opportunity for advancement; indeed, she was doing the very same job as before. Finally, according to Puckett's deposition testimony, in the Postal Service, "you have your hours changed quite frequently."[32] Indeed, it is clear from Puckett's testimony that she had had her hours changed not infrequently. This suggests that a reasonable person would view Mendez's decision to change Puckett's hours as just a regular part of working for the USPS and not as an adverse-employment action.

Puckett states that as a result of the change in her hours, she has had sleep problems and that her home life has been adversely affected. She claims that her husband must now stay up past his bedtime to wait for her to come home and that she is tired and tense. However, Puckett's claims about the negative effects the change in hours has had on her personal life are unavailing because, as stated, the adverse-employment-action determination is an objective assessment. Viewed objec-

---

**31.** Def.'s Motion, Ex. 16, Pucket Depo. 45–46.

**32.** *Id.* at 18.

tively, Mendez's decision to change Puckett's work hours does not constitute an adverse-employment action.

This is not to say that a change in work hours can never amount to an adverse-employment action. For example, in *Mason v. City of Tampa*, 134 F.Supp.2d 1309, 1315 (M.D.Fla.2000), the court held that a police officer was subjected to an adverse-employment action for purposes of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.A. §§ 2000e through 2000e–17, 1981a, when she was transferred from the day-shift to the evening-shift. The court based its decision on affidavits submitted by the plaintiff to the effect that the night-shift was viewed as less prestigious. However, in this case there is no such evidence to establish that a reasonable person would conclude that Mendez's decision was an adverse-employment action. Accordingly, the court will grant summary judgment on Puckett's discrimination claim.

### D. Summary Judgment on Retaliation Claim

■ Finally, Potter moves for summary judgment on Puckett's retaliation claim on the same ground as above, that Mendez's decision to change Puckett's hours was not an adverse-employment action. "In order to establish a claim of retaliation under the Rehabilitation Act, the plaintiff must establish: (1) statutorily protected expression; (2) adverse-employment action; and (3) a causal link between the protected activity and the adverse action." *Johnston v. Henderson*, 144 F.Supp.2d 1341, 1355 n. 6 (S.D.Fla.2001). For the reasons given above, the court finds that there is not a genuine issue of fact as to whether the change in hours was an adverse-employment action. Accordingly, the court will grant summary judgment on Puckett's retaliation claim.

### IV. CONCLUSION

The court will grant Potter's motion to dismiss and motion for summary judgment in their entirety. An appropriate judgment will be entered.

### JUDGMENT

In accordance with the memorandum opinion entered this date, it is the ORDER, JUDGMENT, and DECREE of the court as follows:

(1) The motion to dismiss and the alternative motion for summary judgment, filed by defendant John E. Potter on May 7, 2004 (Doc. No. 12), are granted.

(2) Judgment is entered in favor of defendant Potter and against plaintiff Peggy S. Puckett, with plaintiff Puckett taking nothing by her complaint.

It is further ORDERED that costs are taxed against plaintiff Puckett, for which execution may issue.

The clerk of this court is DIRECTED to enter this document on the civil docket as a final judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure.